25504. CONTINENTAL CASUALTY CO. *et al. v.* CALDWELL *et al.*

DECIDED OCTOBER 30, 1936. REHEARING DENIED DECEMBER 17, 1936.

18

*Neely, Marshall & Greene,* for plaintiffs in error.

*Howell Brooke, James N. Frazer, Sidney Smith,* contra.

MacINTYRE, J. The exception is to a judgment of the superior court approving an award of the Department of Industrial Relations in favor of William Caldwell, employee, and against the Georgia Marble Company, employer, and the Continental Casualty Company, insurance carrier. It appears from the record that the Continental Casualty Company was the insurance carrier for the employer's plant at Nelson, Georgia, and that the Hartford Accident and Indemnity Company was the insurance carrier at other places where the Georgia Marble Company operated, including Griffin, but not Nelson. The Georgia Marble Company and the Continental Casualty Company are the plaintiffs in error, and William Caldwell and the Hartford Accident and Indemnity Company are defendants in error. We have first to consider a motion made in this court to remand "this controversy to the Department of Industrial Relations for the purpose of taking the newly discovered evidence set forth in the affidavit of Mrs. A. J. Caldwell, and such other evidence as may be pertinent or material to the issues involved in this case." This motion avers that "subsequent to the hearing in this matter before the Department of Industrial Relations, and subsequent to the oral argument in . . this court, plaintiffs in error have been furnished with" said affidavit. The purport of this affidavit is that Caldwell received his injury by falling over a box in his home and sticking a splinter in his eye at a time when he was intoxicated,—an incident entirely disconnected with his master's business. "The design of the workmen's compensation act is to furnish a speedy, inexpensive, and final settlement of the claim of injured employees. The act abhors and shuns protracted and complicated litigation over the facts of any case. . . For this reason the act makes the finding of the industrial commission upon the facts final and conclusive. The finding of that body upon the facts can not be reviewed in the superior court, if there is evidence to support its finding. Such finding can not be reviewed in the appellate court. The finality of a finding of the industrial commission upon the facts of the case is conclusive and binding upon all courts. The purpose of the act in making such finding conclusive was to avoid the law's delay, which is often the subject of complaint." *Mary-*

*land Casualty Co.* v. *England,* 160 *Ga.* 810, 812 (129 S. E. 75). In their motion the movants "submit that . . under § 114-710 of the Code of 1933 this court has authority to recommit the controversy to the Department of Industrial Relations for further hearing in said case." We find nothing either in the section cited, or in any other part of the workmen's compensation act, which authorizes this court to remand this case because of the alleged newly discovered evidence. "Unless so permitted by the compensation act, the reviewing court can not grant a new trial for newly discovered evidence." 71 C. J. 1398, § 1340; Town of Albion *v.* Industrial Commission, 202 Wis. 15 (231 N. W. 249); Luyk *v.* Hertel, 242 Mich. 445 (219 N. W. 721). It is evident that the purpose of the motion in this case is to procure another hearing or trial before the Department of Industrial Relations, because of the alleged newly discovered evidence. To grant the motion would, we think, be to run counter to the very purpose and spirit of our compensation act, and we find no authority for granting it. We therefore decline to sustain the motion.

Two controlling questions are presented by the record in this case: (1) whether the employee's injury arose out of and in the course of his employment; and (2) whether his injury was covered by the insurance policy of the Continental Casualty Company, or by the policy issued by the Hartford Accident and Indemnity Company. The Georgia Marble Company was engaged in the business of fabricating marble and erecting its finished product. It also did landscape work where such product was erected. Said company had plants at several places, including Nelson, Georgia. William Caldwell was a "work foreman" for that company, and did landscape work for it. He worked most of the time at Nelson, but was "occasionally" sent to work at Griffin and other places. Certain marble, "finished at the Nelson plant," was hauled to Griffin to be used "on a big job" there. Mr. Anderson was vice-president of the Georgia Marble Company. W. H. Caldwell was paid by the hour for his work. W. H. Caldwell testified, in part, as follows: "On Saturday . . , the 13th of April, my boss, Mr. Anderson . . , told me to get ready on Monday to finish up the Griffin job, . . load trucks, and get the amount of everything I had to have on Monday, and early Tuesday morning get down there early enough to do that day's

work and get back into Nelson the same day. On Monday morning I leaped out of bed . . and went out and picked up an old double-bladed ax. . . I had to have a little brace about fourteen inches long, and I picked up . . the ax, and there was a pile of ceiling and flooring throwed out from the planer at the side door, and I went to pick me out a board. I picked up one. . . It was a short piece of plank. I laid it upon a timber lying on the ground and went to cut it off, and it flew up and hit me in the eye. I carried my ax on back to the house and left the board lying there. I don't know what became of it. . . I taken two more tablets to ease my eye and head . . it got kind of numb and quit hurting. Along about eleven o'clock my truck that I was going to take to Griffin with me drove by the front of the yard. I had given the orders to him on Saturday. I told him to drive over by . . I punched on and went over and loaded the sod and loaded up the truck, and drove it back to the plant and parked it until morning." This witness further testified that he "was right at the plant . . between two buildings of the plant" when he hurt his eye; that when injured he was attempting to make "a brace to be used in the material." he was carrying to Griffin; that he had already done some work at Griffin, and was sent there to finish it up; that Mr. Anderson was vice-president of the Georgia Marble Company and was in charge of "the Griffin operation and the Georgia Marble Company;" that the "brace" he was working on when hit was being made "to take to Griffin on Tuesday on this job;" that the Nelson plant opened at seven o'clock, and had not opened when he was hurt, and he did not punch the clock until "a little before one o'clock" that afternoon; that on that day he did not work in the plant, but "was over in the golf field cutting sod;" that he worked there "practically all evening," and "punched out at the same place" he "punched in," the Nelson plant; that he was paid for that work at the Nelson plant; that he was not paid anything for working the morning he was hurt; that his eye was hurting him so much that he "didn't turn in nothing;" that he "would have turned it in on 52-1/2 cents an hour while . . working;" and that he lost his left eye because of said injury.

P. H. Sharkey testified, in part, that Mr. Anderson was vice-president of the Georgia Marble Company, and was in charge of

any work done in the Nelson plant and of outside work in other cities, and the witness was "office manager in Mr. Anderson's office;" that Mr. Caldwell was a "laborer foreman" for the Georgia Marble Company, and was "over the crew of laborers who work in and around the plant;" that he was also good at "landscaping work," and was frequently sent "to these outside jobs where they needed him;" that said company finished the marble product and put it up, and did "landscaping around where they put it up;" that all this came "under the supervision of the Nelson plant;" that Caldwell was working at the Nelson plant on the day he claimed he was injured, but was getting ready to go to Griffin; that Caldwell was not paid anywhere for working that morning, "because of his oversight to check in;" that "when the pay-roll came in it went right on through;" that if witness had known that Caldwell "worked that morning preparatory to going to Griffin," he would have been paid for it; that he was not paid was "due to oversight on his part in his failure to report the time;" that in "a case of this kind where a man is at the plant getting ready, his time would go on at the plant until he leaves to go to the other place, then it would be chargeable on the other job;" that the place where Caldwell swore he was hurt was on the grounds of the Georgia Marble Company at the Nelson plant; and the alleged injury was reported to both the insurance carriers mentioned.

Of course a compensable injury under the workmen's compensation act must arise out of and in the course of the employment. Ga. L. 1920, pp. 167, 168, sec. 2 (d) (Code, § 114-102); *Ocean Accident & Guarantee Corporation* v. *Farr*, 180 *Ga.* 266, 270 (178 S. E. 728). "An injury may occur in the course of the employment, and yet not arise out of it. 'Arising out of' does not mean the same as 'in the course of,' but the expressions in the act impose a double condition. The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in something incidental thereto. . . The words 'arising out of the employment' refer to the causal condition between the employment and the injury." *New Amsterdam Casualty Co.* v. *Sum-*

*rell*, 30 *Ga. App.* 682, 688, 689 (118 S. E. 786); *U. S. Fidelity & Guaranty Co.* v. *Waymick*, 42 *Ga. App.* 177 (155 S. E. 366), affirmed, 173 *Ga.* 67 (159 S. E. 564). Many cases have occurred where the employee was injured while performing duties naturally incident to the employer's work. See decisions last cited. "Where in the trial of a case before the Department of Industrial Relations it appeared from the evidence that the place of actual work of the employee, who was paid by the day, was in the woods twenty miles from his residence, which was near the mill of his employer, and that he came to the mill each morning to catch a truck of a third person in order to obtain a free ride to his place of work, doing this with the knowledge, consent, and expectation of his employer, but without any express agreement between him and his employer or between the employer and the owner of the truck as to such transportation, and the employee was thrown from the truck and killed when one of the wheels jarred from running over some object which fell off the truck into the highway, the department was authorized to find that the injury and death of such employee arose out of and in the course of his employment." *Cooper* v. *Lumbermen's Mutual Casualty Co.*, 179 *Ga.* 256, 260 (175 S. E. 577). Headnote 2 of this decision reads: "There being some competent evidence to support the finding and award of the department, the Court of Appeals erred in reversing an affirmance by the superior court." The findings of fact by the Department of Industrial Relations, in the absence of fraud, are conclusive on both the superior and appellate courts. Code, § 114-710; *Maryland Casualty Co.* v. *England*, 160 *Ga.* 810, 812 (129 S. E. 75). The vital question is whether there was any competent evidence to support the finding of the department that the accident arose out of and in the course of the employer's business. We have stated only the evidence which we deem most material to the issues in the case. Our view is that the Department of Industrial Relations had the right to conclude from the evidence that the order of the employee's superior to get everything ready on Monday and proceed to Griffin on the following day was broad enough to include the making of the brace in question; that in making his preparation to go to Griffin he was working at the Nelson plant; and that he would have been paid off at the Nelson plant for his morning's work but for the fact that he did not

punch the time-clock until about one o'clock in the afternoon. In short, our view is that the Department of Industrial Relations was warranted in concluding that the employee's injury was an accident arising out of and in the course of his employment.

As stated, it was admitted by counsel for the insurance companies that the policy of the Continental Casualty Company covered employees of the Georgia Marble Company at the Nelson plant, and was confined exclusively to that plant; and the policy of the Hartford Accident and Indemnity Company covered the employees of the Georgia Marble Company at places other than Nelson, and did not cover the Nelson plant. It is argued with much force that the Continental Casualty Company is not liable, for the reason that the employee was engaged in work incidental to the work at Griffin when he is alleged to have been injured. Our view of the matter is so well expressed by the Department of Industrial Relations that we quote as follows from its findings: "Enough evidence has been quoted to show that, as a matter of fact, Mr. Caldwell was injured while engaged in work at the Nelson plant, which accident arose out of and in course of his employment; and though preparing to go to another operation, he was still an employee of the plant at Nelson, and therefore unquestionably comes under the policy issued by the Continental Casualty Company." "Industrial accident insurance policy, specifically limited to insured employer's automobile body manufacturing plants in Manhattan and Brooklyn, *held* not to cover injury to employee in insured's New Jersey plant, on theory that such employee was only temporarily employed in New Jersey, and that work he performed there was incidental to work carried on by insured in New York, where operations in each plant were independent of others, and such employee, who lived in Manhattan, had worked at New Jersey plant for three years." Szabo *v.* Standard Commercial Body Corporation, 221 App. Div. 722 (225 N. Y. Supp. 332). While the facts of the case from which the quotation is taken are very different from those in the case at bar, we think the ruling in the Szabo case is pertinent to the question under consideration. We hold that the affirmance by the superior court of the conclusion of the Department of Industrial Relations that the Continental Casualty Company was liable for the accident at the Nelson plant of the Georgia Marble Company was correct.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING

It is averred in the motion for a rehearing, made by counsel for the Continental Casualty Company, that this court was in error in stating in the opinion rendered that the Georgia Marble Company "had plants in several places, including Nelson, Georgia, and Griffin, Georgia," for the reason that said company "did not have a plant at Griffin." This criticism is correct, for it does appear that the Georgia Marble Company had no plant at Griffin, and that the applicant was injured while making preparations to go to Griffin to perform work there connected with the erection of marble fabricated at the Nelson plant. The correction has been made in the original opinion. In affirming the award of the single director, the full board said: "The Continental Casualty Company is the insurance carrier for the Nelson plant of the Georgia Marble Company, and the Hartford Accident and Indemnity Company is the insurance carrier for all the operations of the Georgia Marble Company other than at the Nelson plant." An examination of the record satisfies us that this statement is true. We do not perceive that the fact that the Georgia Marble Company did not have a plant at Griffin can have the effect of weakening or changing the soundness of our conclusion that there was evidence to support the finding of the Department of Industrial Relations that the Continental Casualty Company was the insurance carrier that was liable. Neither do we find any satisfactory reason for changing our view that there was competent evidence to support the finding of the Department of Industrial Relations that the accident arose out of and in the course of the employment. The motion for rehearing is therefore denied. *Broyles, C. J., and Guerry, J., concur.*