68440. SOUTHEASTERN ALUMINUM RECYCLING, INC. et al. v. RAYBURN.
(324 SE2d 194)

BENHAM, Judge.

Appellee injured his back on June 19, 1981, when he caught a 1,500 pound bale of copper wire that slipped as he and his co-workers attempted to load it onto a tractor trailer. He then notified his supervisor of the injury and inquired about a company doctor. The supervisor responded that there was no company doctor and that if appellee wanted a doctor, he should see his personal physician. Appellee consulted and was treated by his family chiropractor, but as time progressed his injury became more painful. Approximately one month after the accident, appellee notified his employer, appellant Southeastern Aluminum Recycling, Inc. ("Southeastern"), that his physician recommended he be hospitalized. Southeastern then terminated appellee, but for reasons unrelated to his disability. Two weeks later, Southeastern completed a Form WC 1 (Employer's First Report of Injury) and sent it to the company's insurer, appellant Morrison Assurance Company, Inc. ("Morrison"). On September 1, 1981, appellants paid appellee $836, without an award, which represented seven weeks of workers' compensation income benefits at $110 per week and $66 in penalties for the first four benefit weeks pursuant to OCGA § 34-9-221 (e). On September 9, 1981, appellants filed Form WC 3 (Notice to Controvert Payment of Compensation).

After a hearing held pursuant to the decision by the Supreme Court in this case (251 Ga. 365 (306 SE2d 240) (1983)), appellee was awarded workers' compensation benefits, attorney fees, and medical expenses. Appellants sought a discretionary appeal, and we granted their application to determine the validity of appellants' notice to controvert.

1. The board held that appellants failed to file a timely notice to controvert under OCGA § 34-9-221 (d). Appellants argue that since they paid compensation to appellee without an award, they were entitled to controvert the claim under OCGA § 34-9-221 (h) rather than § 34-9-221 (d). Subsection (d) provides: "If the employer controverts the right to compensation, it shall file with the board, on or before the twenty-first day after knowledge of the alleged injury or death, a notice in accordance with the form prescribed by the board, stating that the right of compensation is controverted and stating the name of the claimant, the name of the employer, the date of the alleged injury or death, and the ground upon which the right to compensation is con-

troverted." Subsection (h) provides: "Where compensation is being paid without an award, the right to compensation shall not be controverted except upon the grounds of change in condition or newly discovered evidence unless notice to controvert is filed with the board within 60 days of the due date of first payment of compensation."

The legislature apparently recognized that two distinct situations could occur when an injured employee seeks workers' compensation benefits. Subsection (d) covers the situation in which the employer initially determines it has grounds to contest payment of compensation, while subsection (h) addresses situations in which the employer has begun paying compensation, but subsequently determines that grounds exist for contesting payment.

The Workers' Compensation Act was designed to provide immediate financial assistance to injured employees and to furnish a speedy, inexpensive and final settlement of their claims. *Slaten v. Travelers Ins. Co.*, 197 Ga. 1 (28 SE2d 280) (1943); *Continental Cas. Co. v. Caldwell,* 55 Ga. App. 17 (189 SE 408) (1936). We conclude that the legislative intent behind OCGA § 34-9-221 was to minimize the hardship on the injured worker by requiring the employer either to act quickly when it knows a claim is controvertible, so as to expedite final resolution of the matter, or to pay compensation while investigating the matter more closely.

We have previously ruled that failure to file the notice to controvert does not preclude employers and insurers from defending a claim (*Raines & Milam v. Milam*, 161 Ga. App. 860 (289 SE2d 785) (1982)); nor does it shift the burden of proof to the employer. *Holt Svc. Co. v. Modlin*, 163 Ga. App. 283 (293 SE2d 741) (1982). We hold here that if an employer has paid all of the accrued income benefits without an award, including penalties provided for any late payment, and continues to make the periodic benefit payments pursuant to OCGA § 34-9-221 (e), the employer is entitled to controvert the worker's right to compensation under § 34-9-221 (h).

In this case, appellants claim that their lump sum payment constituted all of the benefits due appellee, along with the 15% penalty imposed by § 34-9-221 (e). However, the board affirmed the ALJ's finding that the appellee was underpaid and the conclusion that there had been no valid filing of a notice to controvert. OCGA § 34-9-221 (e) states: "If *any* income benefits payable without an award are not paid within 14 days after becoming due, there shall be added to the *accrued* income benefits an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the *accrued* income benefits unless notice is filed under subsection (d) of this Code section or unless this nonpayment is excused by the board after a showing by the employer that owing to conditions beyond control of the employer the income benefits could not be paid within the period

prescribed." (Emphasis supplied.)

The Workers' Compensation Act must be given a liberal interpretation in favor of the claimant. *Gen. Motors Corp. v. Hargis*, 114 Ga. App. 143 (1) (150 SE2d 303) (1966). Since appellants failed to pay appellee's first four weeks of benefits within the 14-day period, they were required to add the 15% penalty to all seven weeks of income, because all that income had *accrued* at the time appellants made payment. Appellants had not made the proper payment, nor had they been excused from doing so; therefore, their notice to controvert was not valid.

2. Appellants also claim that error was committed when the board approved the express invocation of Board Rule 705 (d), which was declared invalid in *Holt*, supra. The application of a presumption of compensability was improper as a matter of law, requiring that the the case be reconsidered by the ALJ. We cannot accept appellants' suggestion that we affirm the award in spite of the error. "[J]udgments based on erroneous theories of law are generally reversed in the appellate courts. [Cits.] Though there is substantial evidence in the record which would have supported [the judgment, it] . . . must be reversed, and this issue considered under a correct theory of law because we cannot say what the trial judge would have concluded if he had been relying on the correct theory. [Cit.]" *Meyers v. Glover*, 152 Ga. App. 679 (3) (263 SE2d 539) (1979), overruled on other grounds, *McCord v. Jones*, 168 Ga. App. 891 (311 SE2d 209) (1983).

3. The attorney fee award to appellee is also assigned as error. We find that the award was properly made, in accordance with OCGA § 34-9-108 (b) (2), since appellants did not comply with OCGA § 34-9-221 (b) and (e) and had no reasonable grounds for their noncompliance.

4. The final contested issue involves appellee's medical expenses, which appellants argue were unauthorized. We disagree. The record shows that Southeastern failed to maintain the "panel of physicians" as required by OCGA § 34-9-201 (b), and appellee was instructed to consult a doctor of his own choosing. Therefore, appellants were properly held liable for the reasonable medical expenses incurred during appellee's compensable injury. OCGA § 34-9-201 (e).

*Judgment reversed and case remanded. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 12, 1984 —
REHEARING DENIED NOVEMBER 20, 1984 

*John M. Williams, Benjamin H. Terry*, for appellants.

*George W. Woodall*, for appellee.