A97A0749. WEST MARIETTA HARDWARE et al. v. CHANDLER.
(489 SE2d 584)

SMITH, Judge.

We granted a discretionary appeal by the employer and insurer in this workers' compensation case. The employer and insurer raise four enumerations challenging the award. We conclude that at least one of the enumerations is meritorious, and we therefore reverse.

The record shows that while a full-time student, the claimant, Michele Chandler, worked at West Marietta Hardware as the office manager. She suffered a compensable work-related injury on September 13, 1993, when two metal shelves fell on her, hitting the left side of her head. Complaining of headache, nausea, and lightheadedness, she consulted a doctor on her employer's approved list, who diagnosed a mild contusion.

Chandler's recurrent headaches then caused her to visit the local hospital emergency room, which diagnosed concussion syndrome, referred her to a neurologist, and gave her a work excuse. The neurologist diagnosed post-concussion syndrome and post-traumatic vas-

cular headaches and released her to return to regular duty after one week, noting that a CAT scan was unremarkable. Her employer, West Marietta Hardware, accepted her claim for compensation, which was paid until she returned to work without restriction on September 27, 1993.

She continued to work at West Marietta Hardware until February 1995, although her complaints persisted and she continued to see various doctors. She complained primarily of headaches but also of other symptoms, including at various times confusion, memory loss, nausea, difficulty concentrating, and depression. At her sister's suggestion, she consulted Dr. Donald Orr on August 3, 1994. Dr. Orr's initial impression was post-traumatic muscle contraction headaches with paracervical trigger points. Chandler continued to see Dr. Orr, and his notes indicate that she showed some improvement.

In February 1995, Chandler left her employment at West Marietta Hardware for personal reasons. She left Georgia temporarily, but when she returned, she again saw Dr. Orr. As her symptoms evolved, with numbness and pain in the neck, shoulders, and arms emerging and increasing, Dr. Orr's working diagnosis changed to possible thoracic outlet syndrome. At Dr. Orr's recommendation, Chandler saw Dr. Robert Sessions for a second opinion, and Dr. Sessions agreed with Dr. Orr's diagnosis of thoracic outlet syndrome. On May 8, 1995, Dr. Orr instructed Chandler not to return to work "while additional investigation for this disorder is pursued" and while she remained symptomatic at that level. Chandler has not worked since.

An independent medical examination was conducted by Dr. Robert Gilbert at the request of the insurer. Dr. Gilbert rejected the diagnosis of thoracic outlet syndrome and found that Chandler could perform normal duties.

Chandler applied for workers' compensation benefits, alleging a change in condition. The employer controverted the claim, and after a hearing, the ALJ found that Chandler was suffering from thoracic outlet syndrome proximately caused by her work injury on September 13, 1993, and that, as a result, she was totally disabled. He awarded continuing benefits retroactive to May 8, 1995. The appellate division affirmed the award. No hearing was scheduled on the appeal to superior court, and the award was affirmed by operation of law. OCGA § 34-9-105 (b).

1. An employee who sustains a compensable injury, returns to work, and leaves for a reason unrelated to the injury must satisfy certain conditions when seeking the resumption of workers' compensation benefits because of a change in condition. Such an employee "must establish by a preponderance of the evidence that he or she suffered a loss of earning power as a result of a compensable work-related injury; continues to suffer physical limitations attributable to

that injury; and has made a diligent, but unsuccessful search to secure suitable employment" after leaving work. *Maloney v. Gordon County Farms*, 265 Ga. 825, 828 (462 SE2d 606) (1995). The search for work need not be shown when claimants are totally disabled, however. In those circumstances, a search for suitable employment would be a "purposeless demonstration of their disability by seeking work . . . they are unable to perform." *Richardson v. Dennis, Corry, Porter & Thornton*, 216 Ga. App. 476, 477 (454 SE2d 643) (1995).

The employer and insurer contend that Chandler did not meet the requirements of *Maloney* because she showed *no* search for work. They argue that the ALJ erred in concluding that Chandler was totally disabled because no doctor stated that she could not work at all. In support of this position, they point to the deposition testimony of Dr. Orr, Chandler's primary treating physician, that she could do *some* work, provided it was not repetitive. They characterize this testimony as releasing Chandler to light-duty work.

Appellants mischaracterize the evidence. Nowhere in his testimony did Dr. Orr state that Chandler was released to light duty; on the contrary, he advised her not to work at all. He did indicate when questioned by appellants' attorney that "[i]f it was a position in which she didn't have to use her arm, then there would be no immediate reason she couldn't" work. If her work were confined to "paper shuffling without the computer," for instance, that might be all right. But he was unsure of this because he realized that "many types of work would involve work at the computer or moving the extremities." After further questioning, Dr. Orr concluded that any type of work that was repetitive would be contraindicated. He still had not changed his instruction to her to be "off work duty completely."

Although some evidence exists to the contrary, the ALJ was authorized to conclude that Chandler was totally disabled and need not engage in a purposeless demonstration of that disability by seeking work she could not perform. The exception provided in *Richardson* applies, and the award of benefits was not error in this regard.

2. In two enumerations, appellants assert error relating to the issue of whether Chandler was successfully impeached.

(a) Appellants strongly suggest that the thoracic outlet syndrome diagnosed by Chandler's authorized treating physician is either a fabrication or was caused by an automobile accident in 1995. They maintain that the ALJ erred in believing Chandler about her symptoms and their causation, given that her credibility was impeached by contradictory statements with regard to her symptoms, as reported to various doctors.

But no evidence was presented indicating that the 1995 vehicular accident caused any injury to Chandler. The record includes statements and notes of various doctors containing information that con-

flicts in certain respects with Chandler's testimony. The record also contains testimony from Chandler, however, indicating that certain medical history information recorded in those notes was not related by her and is simply incorrect. Moreover, the ALJ's award recites that the ALJ carefully weighed and considered all the evidence, which presumably included Chandler's allegedly inconsistent or contradictory statements.

The ALJ was the factfinder at the hearing. As such, regardless of appellants' efforts to impeach Chandler, the ALJ had the authority and privilege to believe her testimony. The ALJ's and the appellate division's "findings of fact, when supported by any evidence, are conclusive and binding. [Cit.]" *Dept. of Public Safety v. Boatright*, 188 Ga. App. 612, 614 (373 SE2d 770) (1988).

(b) Appellants maintain that Chandler's credibility was impugned by her actions in providing false information to the state when she applied for unemployment benefits and the ALJ therefore erred in refusing to consider these actions.

The record shows that Chandler left her job at West Marietta Hardware to care for her terminally ill mother. As the office manager, she completed her own separation notice. She listed lack of work as the reason for termination, which was untrue. The Department of Labor initially granted benefits, but her employer appealed and the decision was reversed.

The ALJ did not refuse to permit appellants to question Chandler about this incident. On the contrary, three witnesses, including Chandler, were all questioned regarding the reasons for her leaving work and her subsequent claim for unemployment benefits. The former general·manager testified that he "did look at" the separation notice and he approved it as Chandler had filled it out, because no other stated reason on the form "came close to" the actual reason she was leaving.

(c) Appellants contend the ALJ applied an incorrect legal standard in finding that Chandler had not been impeached. We agree that the ALJ was under a misapprehension concerning the law on impeachment.

The ALJ concluded that to serve as impeachment, "there must be inconsistent statements bearing on material facts of the case at hand or proof of a crime involving moral turpitude," and that neither was present in this case. He found, therefore, that although Chandler's actions regarding her termination were not admirable, she had not been impeached.

Although the ALJ correctly stated some of the statutory methods of impeaching a witness, as embodied in OCGA §§ 24-9-80 through 24-9-84, other methods of impeaching a witness are also available. "Generally, a party may show anything which in the slightest degree

affects the credit of an opposing witness. A witness may be impeached on a collateral issue which is indirectly material to the issue in the case." (Citations and punctuation omitted.) *Pound v. Medney*, 176 Ga. App. 756, 760 (2) (337 SE2d 772) (1985). The questioning at issue here was a permissible attempt to impeach Chandler's credibility.

It is unclear whether the ALJ's misapprehension regarding permissible impeachment affected his award. It is entirely possible that had the ALJ known he was permitted to consider this evidence as impeaching Chandler's credibility, he still would have reached the same conclusion. But it is also possible that he would not. A new hearing is not required, but we must remand this case so that the trier of fact may evaluate the evidence, applying the correct legal standard as to impeachment and credibility.

3. We find no merit in appellants' contention that the superior court erred as a matter of law in refusing their request to schedule a hearing. Upon appeal to superior court, after transmission of the record, the case "may then be brought by either party upon ten days' written notice to the other before the superior court for a hearing upon such record, *subject to an assignment of the case for hearing by the court*; provided, however, if the court does not hear the case within 60 days from the date the notice of appeal is filed with the board, the decision of the board shall be considered affirmed by operation of law," except under circumstances not present here. (Emphasis supplied.) OCGA § 34-9-105 (b). The statute clearly does not make scheduling a hearing mandatory upon the superior court; the very fact that procedures are outlined for affirmance in cases when no hearing is scheduled underscores the permissive nature of the hearing.

*Case remanded with direction. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in Divisions 1 and 2 on the merits of the issues ruled on. I am compelled to concur in Division 3, which focuses on an aspect of appellate procedure in workers' compensation cases, because the statute does not make the exercise of superior court appellate jurisdiction dependent on even a good faith effort by appellant to pursue, or by the court to afford, that remedy.

Appellants enumerate as error the deprivation of their right to an appeal and decision in the superior court and assert that the superior court refused their request for a hearing and permitted the decision of the board to become affirmed by operation of law.

On May 21, 1996, appellants filed with the board a timely appeal from its award. In full compliance with OCGA § 34-9-105 (b), which

governs such appeals, the board transmitted the record to the superior court on June 12, and it was filed in the clerk's office on June 17. On July 29, more than 60 days from the date the notice of appeal was filed with the board, the superior court filed a "certificate." It read: "This is to certify that this Court rejected the Employer/Insurer's request that oral argument be scheduled in the above-referenced appeal from the Appellate Division of the Georgia State Board of Workers' Compensation. This Court neither heard nor scheduled oral argument in the above-referenced case within sixty days from the date the notice of appeal was filed with the Georgia State Board of Workers' Compensation, preferring instead that this case be affirmed by operation of law." A letter to the judge to whom the appeal was assigned indicates that the certificate was filed in response to a request to the judge, in order to memorialize what transpired when appellants sought a hearing.

Thereafter, appellants filed an application for appeal to the Court of Appeals, pursuant to OCGA §§ 5-6-35 (a) (1) and 34-9-105 (d). This Court permitted the appeal to proceed, and appellants duly filed a notice of appeal on September 17.

OCGA § 34-9-105 (b) provides what ostensibly is a right of appeal to the superior court "in the manner and upon the grounds provided in this Code section." After the record is filed with the clerk, "[t]he case so appealed may then be brought by either party upon ten days' written notice to the other before the superior court for a hearing upon such record, subject to an assignment of the case for hearing by the court." The latter clause retains in the court the power to set its calendar. If the case is not heard within 60 days or within 20 days after a continued hearing or if the superior court's dispositive order is not entered within 20 days of the hearing, the decision of the board is affirmed by operation of law.[1]

Before 1988, an appeal to the courts was a matter of right in workers' compensation cases. Thereafter, and now, it is a matter of discretion. Right of access to the courts for review of the administrative decision was eliminated by the legislature.

---

[1] Prior to July 1, 1997, the 60 days was to be measured from the date the notice of appeal was filed with the board. The law was amended to provide that the 60-day period be measured from the date of docketing in the superior court, thus recognizing that a more realistic date for measurement of the time during which the superior court could hold a hearing was the date the case arrived in the superior court. The amendment thus gives a full two-month period for the superior court to hear the case. Ga. L. 1997, p. 1367, § 4. This resolves the problem noted by the two appellate courts in a 1990 case, *Nelson v. Felton Pearson Co.*, 195 Ga. App. 92, 93 (392 SE2d 274) (1990), rev'd, *Felton Pearson Co. v. Nelson*, 260 Ga. 513, 514, n. 1 (397 SE2d 431) (1990). The inequity was also pinpointed in *Synthetic Indus. v. Camp*, 196 Ga. App. 637 (396 SE2d 518) (1990), and illustrated by *Lanier v. Jim Brown Dev. Corp.*, 199 Ga. App. 255 (404 SE2d 626) (1991). Another aspect of inequity in the procedure is noted in *Coronet Carpets v. Reynolds*, 199 Ga. App. 383 (405 SE2d 103) (1991).

In *Southeastern Aluminum Recycling v. Rayburn*, 251 Ga. 365, 366 (306 SE2d 240) (1983), the Supreme Court construed OCGA §§ 34-9-105 and 5-6-35 to constitute the superior courts as "the courts of last resort as a matter of right in workers' compensation and other cases." It explained that in consequence, "[s]itting as an appellate court of last resort of right, the superior courts are no longer merely a base which must be touched en route in the course of a workers' compensation appeal. Under OCGA § 5-6-35 . . ., the superior courts have all of the authority and all of the responsibilities which the appellate courts formerly had in workers' compensation cases. It therefore is imperative that the hearings in superior courts in workers' compensation appeals, provided for by law, be conducted in a plenary manner." Id. Accordingly, the Supreme Court remanded that case to the superior court because the party appealing the board's award had not been afforded its right to the hearing.

The law in existence at that time did not contain a proviso for the board's award to become affirmed by operation of law in the event prescribed procedural steps were not taken by the parties or by the court. See OCGA § 34-9-105 (b) (1982).

After the hearing by the Supreme Court in *Southeastern Aluminum Recycling*, we granted a discretionary appeal. In the course of our opinion we reiterated the long-standing recognition that "[t]he Workers' Compensation Act was designed to provide immediate financial assistance to injured employees and to furnish a speedy, inexpensive and final settlement of their claims. [Cits.]" *Southeastern Aluminum Recycling v. Rayburn*, 172 Ga. App. 648, 649 (1) (324 SE2d 194) (1984).

In 1987, the procedure was changed to shorten the time for appeal from 30 days to 20 days. Ga. L. 1987, pp. 806, 808, § 3. In 1988, the law was amended twice. The first time a proviso for automatic affirmance ("considered affirmed") upon inaction by the superior court was added. Ga. L. 1988, pp. 535, 536, § 1. The second time, the proviso was eliminated. Ga. L. 1988, pp. 1679, 1690, § 20. The next session of the General Assembly saw a return of the automatic affirmance proviso in subsection (b) ("considered affirmed by operation of law") and the addition in subsection (d) of a time measurement for such affirmances for the purpose of applications to be made pursuant to OCGA § 5-6-35. Ga. L. 1989, pp. 579, 581, § 2. In conjunction with the 1997 amendment (Ga. L. 1997, p. 1367, § 4), that is currently the law.

Before the proviso was added back and expanded, and while the law was as stated in the latter 1989 amendment, this Court ruled that the burden was on the appellant in superior court to ensure a timely hearing, so that a hearing by the superior court outside the time limits was null and void. *AT&T Technologies v. Barrett*, 195 Ga.

App. 675, 676 (395 SE2d 22) (1990).

Nevertheless, later in 1990, the Supreme Court held that the time requirements for the superior court appeal, while technically exceeded, were sufficiently met so as to allow the principle of "fair treatment of the parties and the policy of reaching the merits of a controversy" to prevail over the short and rigid time periods set. *Felton Pearson Co. v. Nelson*, 260 Ga. at 515. Thus the Court favored superior court review over affirmance of board decision by operation of law.[2]

Thereafter, this Court dealt with applications for review when there was no superior court judgment or order to consider. In *Atlanta Family Restaurants v. Perry*, 209 Ga. App. 581, 582 (434 SE2d 140) (1993), we granted an application for discretionary appeal, held that the *board* erred, and ruled that "the dismissal [by the board] should not have been affirmed by the superior court." The special concurrence pointed out that the superior court had not in fact rendered a judgment, and it highlighted some of the problems with this awkward, drawn-out, and jurisprudentially unsound procedure. Id. at 582-585 (Beasley, P. J., concurring specially). See, for other aspects of this problematic scheme, *Reynolds Constr. Co. v. Reynolds*, 218 Ga. App. 23, 26-27 (459 SE2d 612) (1995) (Beasley, C. J., concurring specially).

The opinions in *Borden, Inc. v. Holland*, 212 Ga. App. 820 (442 SE2d 916) (1994), also illustrate the problematic nature of this scheme. A discretionary appeal in this Court was permitted, the judgment of the superior court attempting to rule on the merits of the appeal from the board was reversed as lacking jurisdiction, and neither the employee (who appealed from the board award to the superior court) nor the employer (who appealed with permission to this Court) received a judicial review on the merits of their respective positions.

Likewise in *Buschel v. Kysor/Warren*, 213 Ga. App. 91 (444 SE2d 105) (1994), it was held that the superior court judgment was a nullity because the statutory time limits were exceeded. But because there was a cross-appeal by the employer, which challenged the award of the board, this Court reviewed the board's award on the merits. The Court ruled that the board's award was supported by the

---

[2] The Supreme Court reversed the Court of Appeals decision, *Nelson v. Felton Pearson Co.*, 195 Ga. App. 92, which had held that the board's award was affirmed by operation of law so that the superior court's reversal of the board's award was deemed beyond that court's authority. The ultimate result was reinstatement of the reversal, but it is not reported whether employee Nelson again sought a discretionary appeal, this time on the merits. Nelson's first appeal to the Court of Appeals raised by enumeration of error only the issue of the superior court's jurisdiction to act. See *Nelson v. Felton Pearson Co.*, 198 Ga. App. 532 (402 SE2d 807) (1991).

evidence and directed the superior court "to issue an order stating the decision of the full board was affirmed by operation of law." Id. at 95 (5).

*Clinical Arts &c. Svcs. v. Smith*, 218 Ga. App. 681 (462 SE2d 757) (1995), is an example of a by-pass case. No action on the appeal by the superior court worked an affirmance of the board decision by operation of law, and this Court granted a discretionary appeal. It reviewed the board's decision directly and concluded that the board had used the wrong standard in considering the evidence. So the Court reversed *that* decision and "remand[ed] the case to the superior court with directions that the case be recommitted to the appellate division of the Board for review under the proper standard as set forth in [the] opinion." (Footnote omitted.) Id. at 683.

*Harrell v. City of Albany Police Dept.*, 219 Ga. App. 810 (466 SE2d 682) (1996), is another example of a by-pass case. In the absence of a hearing and decision in the superior court, this Court was compelled to review the decision of the appellate division of the board because the application revealed a possibility of reversible error. As in *Clinical Arts*, the board decision was reversed and the case remanded, not to the board but to the superior court which had not acted, with direction that the case be recommitted to the board for reconsideration in light of a recent Supreme Court decision.[3]

Does all of this mean that the parties and the superior court each have the option of avoiding superior court review by simply allowing the time to expire? We have countenanced such a practice and construed subsections (b) and (d) of OCGA § 34-9-105 to permit this by-passing of appellate review by the superior court. If an appellant chooses to seek review in the Court of Appeals directly, then appellant need only omit giving notice for a hearing in the superior court. The time will expire, the decision of the board will become the decision of the superior court by operation of law, and appellant may apply for discretionary appeal under OCGA § 5-6-35 (a) (1). By the same token, if the superior court does not wish to hold a hearing or decide the case, it need only refuse to act, as in this case, or refrain from acting. The result in either event is a direct review by this Court, by default, of the award of the workers' compensation board, if we grant the application. It is a big "if," and when it is prompted by the inaction or refusal of the superior court, the appellant loses what was once a right to a direct appeal.

---

[3] Although the Court in the instant case does not give procedural direction but simply remands the case, I assume that because of the ruling in Division 2 (b), it is to be remanded to the superior court to be remanded to the appellate division of the board to be remanded to the administrative law judge for further consideration. Thereafter the whole process can begin anew.

This occurs after a long period of non-action while the case simply awaits the ticking of the clock; it measurably delays finality for the claim. If there is no review in the superior court, the statutory dead time from the date of the award of the board's appellate division is one hundred thirty days, or four months and ten days. OCGA § 34-9-105 (b) and (d). Then, even if an appeal is granted by the Court of Appeals, the statutory time for getting to that point is another seventy days, or two months and ten days. OCGA § 5-6-35 (d), (e), (f) and (g). By the time the superior court clerk has prepared and transmitted the record, appellate briefing, and perhaps oral argument, is accomplished, and the Court of Appeals reaches a decision, up to another year will have passed.

During all of this time, a supersedeas is in effect, and "no [properly insured] employer shall be required to make payment of the award involved in the questions made in the case so appealed until such questions" have been decided. OCGA § 34-9-105 (e). Thus the delay occasioned by the cumbersome process disserves the objective of speedy relief to an injured worker who is entitled to it; plus it increases both the private and public costs of resolution.

. It also destroys a right of access to the courts for the party aggrieved by the administrative body's final decision, when it is the superior court which chooses not to act. That infringes on the constitutional guarantee that "[n]o person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII.

Thus, the superior court can refuse to hear the appeal, and because workers' compensation cases require an application for appeal pursuant to OCGA § 5-6-35 (a) (1), this Court can refuse to hear the appeal (although it did not do so in this case). If both courts refuse, the party aggrieved by the board's decision has no judicial remedy at all nor even a right to an explanation of why the courts refuse to consider the case. Thus there is no longer an appeal of right, and the superior courts are once again "merely a base which must be touched en route in the course of a workers' compensation appeal," a situation considered an anathema by the Supreme Court in *Southeastern Aluminum Recycling*, supra, 251 Ga. at 366.

This completely frustrates the goal of prompt resolution of employees' claims so as to provide financial relief for job-related injuries. It ignores the constitutional mandate for "speedy, efficient, and inexpensive resolution of disputes and prosecutions." Ga. Const. of 1983, Art. VI, Sec. IX, Par. I. It increases the transactional costs of the case, as filing fees, record copying costs, and attorney fees gather along the way. And it adds to the administrative load of the courts, as two courts are automatically involved in such appeals, one which will

not act and the other which may or may not decide the case. If all superior courts were so disposed, then all workers' compensation cases would be final at the administrative board level, subject to judicial review only at the discretion of this Court in accordance with its policy on discretionary appeals.

Appellate procedure for workers' compensation cases cries for reform, to simplify and streamline the process which now has five levels, some of which are optional but still are involved, and the possibility of fourteen adjudicators, assuming there is agreement on the three-member panel of this Court with respect to disposition, and counting a petition for certiorari. If the case achieves whole court status in the Court of Appeals, and there is a petition for certiorari, then eighteen adjudicators are involved in the five levels. All for one worker's claim for workers' compensation benefits.[4] This procedure, although the law, is at odds with the overruling substantive, traditional, and humane public policy for which the Workers' Compensation Act ostensibly stands and which was recently reacknowledged by the Supreme Court: "The legislature has determined that [the exclusivity provision] is the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation." *Doss v. Food Lion*, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996).

It is believed that in this Court's 90-year history, no case has been affirmed by operation of law but has received consideration and action by the Court, as required by the Georgia Constitution. Ga. Const. of 1983, Art. VI, Sec. IX, Par. II. So long as the superior courts have initial jurisdiction of appeals in workers' compensation cases, that jurisdiction should be exercised as well.

Remand for hearing in the superior court in this instance would achieve no purpose because appellants have now had their day in court on the merits of their appeal. Had we denied their application, their only recourse would have been a petition to the Supreme Court of Georgia for certiorari. Although appellants have not been harmed as a matter of law, all parties have borne significant costs attribut-

---

[4] The procedurally tortured case of *Bankhead Enterprises v. Beavers*, 267 Ga. 506 (480 SE2d 840) (1997), bears witness to this morass. The ALJ decided the case. The appellate division reversed, but the superior court reversed and remanded to the board. The appellate division again reversed the ALJ. The superior court again reversed and remanded to the appellate division, and this time with direction to remand to the ALJ. An application for discretionary appeal to this Court from the superior court was denied, but a petition for certiorari in the Supreme Court was granted, and that Court granted the application for discretionary review. It concluded that the superior court had erred and should have affirmed the second award of the appellate division of the board. Thus, all told, five levels of process and fourteen statutory decision-makers entered into the resolution of Beavers' claim for workers' compensation.

able to the complex process.

DECIDED JULY 16, 1997.

*Drew, Eckl & Farnham, John C. Bruffey, Jr., Thomas L. Walker,*
for appellants.
*James A. Shea, Jr.,* for appellee.