A97A2158. CUMBERLAND DISTRIBUTION SERVICES, INC. et al. v. FUSON.
(492 SE2d 2)

POPE, Presiding Judge.

Charles Fuson worked for Cumberland Distribution Services, Inc., from February 6, 1995, until his termination for cause on October 31, 1995. On June 9, 1995, he reported a neck injury at work. Fuson did not miss any work because of the injury and only sought medical benefits before his termination. Afterwards, however, Fuson asserted a disability claim, and Cumberland began paying temporary total disability benefits without an award.

Subsequently, Cumberland discovered that Fuson was working as an "extra" in a movie or television project and suspended benefits on April 9, 1996, based upon a change in condition, i.e., Fuson's return to work. Soon thereafter, Cumberland's insurer discovered that Fuson had a history of prior neck problems. In particular, the insurer obtained physician notes concerning Fuson's seeking treatment for swimmer's ear on June 5, 1995 (four days *before* the alleged injury) which record Fuson's complaint of a chronic neck problem and numbness in his left arm. In light of that newly discovered evidence, the employer/insurer then filed a notice to controvert on May 14, 1996.

Following a hearing on the matter, the administrative law judge (ALJ) concluded that the evidence was insufficient to support suspension of benefits based upon Fuson's limited work as an "extra." However, the ALJ found that Fuson had lied about his condition in both this claim and an earlier workers' compensation claim, and that the newly discovered evidence established that Fuson's neck problem pre-existed his employment with Cumberland and was not aggravated by that work. The ALJ then found that Cumberland was authorized to suspend benefits on April 9, 1996, based upon the

newly discovered evidence and assessed a total of $15,000 in civil penalties against Fuson for having advanced fraudulent claims.

The appellate division upheld the ALJ's determination, but the superior court reversed, holding that Cumberland's notice to controvert was invalid under *Cartersville Ready Mix v. Hamby*, 224 Ga. App. 116 (479 SE2d 767) (1996), and *Southeastern Aluminum Recycling v. Rayburn*, 172 Ga. App. 648 (324 SE2d 194) (1984). This Court then granted Cumberland's discretionary appeal.

Under OCGA § 34-9-221 (h), "[w]here compensation is being paid without an award, the right to compensation shall not be controverted except upon the grounds of change in condition or newly discovered evidence unless notice to controvert is filed with the board within 60 days of the due date of first payment of compensation." In *Rayburn* and *Hamby*, this Court construed that Code section to require employers to pay timely all benefits due; otherwise, a notice to controvert filed pursuant to OCGA § 34-9-221 (h) is invalid.

The legislative intent behind OCGA § 34-9-221 was to minimize the hardship on injured employees by requiring employers to act quickly in controverting a claim or pay compensation while they investigate the matter. "[S]ubsection (h) of the statute is clearly intended to provide some form of protection to the employee's right to continued receipt of the compensation." (Citation, punctuation and emphasis omitted.) *Hamby*, 224 Ga. App. at 118.

Cumberland proposes limiting the rule set forth in *Rayburn* and *Hamby* to the situation presented in those cases, i.e., where an employer attempts to controvert a claim within 60 days of the due date of first payment of compensation but fails to pay all benefits due before filing the notice to controvert. However, the need for protecting an employee's right to continued receipt of compensation is even greater where the employee has depended upon such compensation for a longer period of time. If a notice to controvert filed within 60 days of the first payment is invalid where the employer fails to pay all benefits due, it logically follows that the same rule should apply to the limited situations where an employer may file a notice to controvert after the 60-day period.

In the instant case, however, it does not appear that Cumberland failed to pay all benefits due before filing its notice to controvert. OCGA § 34-9-221 (i) provides that "[w]here compensation is being paid with or without an award and an employer or insurer elects to controvert on the grounds of a change in condition or newly discovered evidence, the employer shall, not later than ten days prior to the due date of the first omitted payment of income benefits, file with the board and the employee or beneficiary a notice to controvert the claim in the manner prescribed by the board." Rule 221 (i) (1) of the Rules & Regulations of the State Board of Workers' Compensation

provides that "[s]uspension of benefits at any time on the grounds of change in condition requires advance notice of 10 days *unless the employee has actually returned to work.*" (Emphasis supplied.)

As noted above, Cumberland filed a notice immediately suspending benefits on April 9, 1996, based upon the information that Fuson had actually returned to work, and Fuson requested a hearing on that suspension. During the pendency of the dispute over the suspension, Cumberland's insurer discovered the evidence of Fuson's pre-existing complaints of chronic neck pain and numbness in his left arm and filed the notice to controvert based on that newly discovered evidence. Both issues were litigated during the hearing that the ALJ eventually held on July 3, 1996.

Fuson prevailed on the issue of whether Cumberland properly suspended benefits based on his return to work, and that partial victory could have subjected Cumberland to an assessment of attorney fees pursuant to OCGA § 34-9-108 (b) (2) and Board Rule 221 (i) (1). See, e.g., *Carr v. A. P. & Harry Jones Logging,* 198 Ga. App. 698 (402 SE2d 538) (1991). But there is no authority for finding that the adverse ruling invalidated Cumberland's notice of suspension.

Inasmuch as Fuson's benefits were already suspended at the time Cumberland's insurer discovered the basis for controverting the claim, the ten-day advance notice requirement of OCGA § 34-9-221 (i) was inapplicable. To hold otherwise would require Cumberland to wait until the disposition of the suspension dispute before it could give notice to controvert, which would be contrary to the legislative intent to require an employer to act quickly when it realizes a claim is controvertible. By filing the notice to controvert during the pendency of the suspension dispute, Cumberland conserved the time and resources of all parties, the State Board, and the courts.

In summary, under the circumstances presented in this case, Cumberland was not delinquent on its payment of benefits due at the time it filed the notice to controvert, and the notice was not invalid on that basis. Accordingly, the superior court's judgment is reversed, and the case is remanded for consideration of other issues Fuson raised in his appeal to the superior court.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED AUGUST 19, 1997 —
RECONSIDERATION DENIED SEPTEMBER 4, 1997 — ▮▮▮▮▮▮▮

*Zirkle & Hoffman, G. Scott Hoffman,* for appellants.

*Stephen A. Friedman & Associates, Michael D. Thorpe*, for appellee.