A93A2229. MACOMBER v. FIRST UNION NATIONAL BANK
OF GEORGIA.
(441 SE2d 276)

JOHNSON, Judge.

Loyd E. Pryor sought to borrow funds to finance his peanut and soybean crops from the Farmer's Home Administration and the Bank of Screven County, predecessor to First Union National Bank of Georgia. Because of the level of Pryor's outstanding debt, and his nonperformance on previous loans, his requests were denied. Pryor then asked a friend, Roger C. Macomber, to loan him the money. Macomber agreed to loan the funds to Pryor, but in order to do so Macomber had to borrow $500,000 from First Union. He executed a promissory note on July 15, 1982, the expressly stated purpose of which was to "provide funds to Mr. Pryor for farming."

W. Thomas Millican II, a local attorney, arranged the loan on behalf of Pryor, and submitted the application on behalf of Macomber. Millican also performed regular legal work for First Union and served on its board of directors. Pryor, Macomber and Jim Adams, who was the president of First Union at the time, all testified in their depositions that they believed that Millican was representing Pryor with respect to the transaction. When the loan funded, Millican deposited the money into his "Special Operating Account" at First Union, to be disbursed to Pryor as needed for his farming operations. Pryor assigned the proceeds from the sale of various crops as well as monies from government agricultural programs to Millican to be credited against the loan. Macomber paid accrued interest and renewed the loan on several occasions.

In 1984, the debt was restructured and Macomber's son-in-law assumed a portion of the loan balance so that Macomber could borrow additional funds to purchase other property. This transaction was never completed, but resulted in the original note being marked paid, and the issuance of another note, dated February 14, 1984, reflecting a new balance of $402,000.

In March 1984, it was discovered that Millican had been embezzling funds from various individuals and entities. Investigations into Millican's business activities were instituted by the FBI and the GBI. Following Millican's suicide in June 1984, the Supreme Court of Georgia appointed a receiver to inventory Millican's files and take such measures as were appropriate to protect the interests of Millican's former clients. On October 8, 1984, the receiver gave Macomber the files pertaining to his loan with First Union. Macomber continued

to pay the interest on the note as it accrued, as well as making an occasional payment to be applied to the principal. In April 1986, Macomber paid the remaining balance due, $373,087.

Macomber filed suit against Millican's estate in June 1987. In his complaint he asserted that he had employed Millican to provide legal services on his behalf in connection with the loan at First Union. In his deposition in this case, however, Macomber denies that Millican represented him in the transaction. Rather, he testified that he understood that Millican was representing Pryor.

This suit, against First Union, was filed in March 1990. It was originally limited to claims of fraud and conversion. First Union filed a motion for summary judgment in June 1991, asserting that the action was barred by the statute of limitation. The complaint was later amended to include a claim for "money had and received." The trial court granted First Union's motion for summary judgment on all claims, but later vacated the order. After several extensions of time to conduct discovery, First Union renewed its motion for summary judgment in January 1993. The trial court granted the motion, finding that the statute of limitation had expired. Macomber appeals.

1. Macomber asserts that the statute of limitation had not expired on his claim for money had and received. The statute of limitation in an action for money had and received is four years. OCGA § 9-3-25; *Sun Fed. Savings &c. Assn. v. Manny*, 156 Ga. App. 807, 808 (2) (275 SE2d 661) (1980). The accrual of such a cause of action begins with the discovery of the fraud. *Lowe v. Presley*, 86 Ga. App. 328 (71 SE2d 730) (1952). The documents regarding Millican's activities were provided to Macomber on October 8, 1984, and at that point he knew or should have known the status of his loan, thus triggering the running of the statute of limitation on any claim premised on money had and received. Therefore, the trial court correctly found that the money had and received claim, filed in 1990, was untimely.

Furthermore, a claim for money had and received must fail on the merits. Although Macomber states in his brief that Millican was the alter ego of First Union, this assertion is unsupported by the record. According to the deposition testimony of Macomber, Pryor and Adams, everyone involved in the transaction believed that Millican was representing Pryor, not the bank. Clearly, First Union also benefitted from procurement of the loan. See *Kirby v. Chester*, 174 Ga. App. 881, 884 (2) (331 SE2d 915) (1985); and see generally *Legacy Homes v. Cole*, 205 Ga. App. 34 (421 SE2d 127) (1992). And even if we go further and allow that Millican, as a member of the board of directors of the bank, was acting in a dual agency role, there is still nothing in the record which would support a theory that Millican was the alter ego of the bank. The money held in Millican's special operating account, i.e., the proceeds received from crop sales, was not ac-

cessible to the bank and could not have been applied to the balance of Macomber's loan without Millican having done so. Neither has Macomber provided any evidence that the funds in Millican's operating account either became the property of the bank or credited to the loan account at Millican's death.

Macomber's assertion that the debt to the bank was extinguished when his loan was restructured in 1984, is contradicted by his own deposition testimony and his own conduct in continuing to renew the new note, pay interest thereon and ultimately satisfying it. *Stephens v. C & S Nat. Bank*, 170 Ga. App. 793, 794 (1) (318 SE2d 216) (1984). Even after viewing all of the evidence most favorably toward Macomber, it is clear that the trial court correctly granted summary judgment in favor of First Union regardless of when such a claim was filed.

2. Similarly, the statute of limitation for Macomber's fraud claims against First Union ran four years after the documents regarding his loan and Millican's accounts were provided to him. Under certain circumstances, fraud can toll the statute of limitation, but it must be such as to prevent and deter the plaintiff from bringing his action. *Webb v. Lewis*, 133 Ga. App. 18, 21 (2) (209 SE2d 712) (1974). Although Macomber knew or should have known in October 1984 that certain credits had not been made to his loan account, he waited nearly six years, until 1990, to bring his action. No evidence has been presented indicating that those certain documents kept under seal after Millican's death contained any information relevant to Macomber's loan which had not been provided to him in 1984.

The statute of limitation begins to run on a cause of action on the date that suit on the claim can first be successfully maintained. *Pridgen v. Auto-Owners Ins. Co.*, 204 Ga. App. 322, 323 (419 SE2d 99) (1992). Assuming arguendo that there was fraud perpetrated by the bank, Macomber could have protected himself by demanding to see the evidence of indebtedness from the date the note was signed and as a customer of the bank *he could have obtained such information*. Despite the numerous extensions of time to conduct discovery, and even if the bank had records other than those which were provided to Macomber in 1984, Macomber is not excused from ascertaining the status of his loan. "Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." (Citations omitted.) *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 757 (250 SE2d 155) (1978). Macomber knew, or should have known, that payments were not being applied to the loan as contemplated when he first heard rumors regarding Millican's activities, after Millican committed suicide, or when the records were given to him in 1984. Any of these occurrences could be con-

strued as having commenced the running of the statute of limitation demanding the trial court grant summary judgment to First Union.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 14, 1994.

*Edenfield, Stone & Cox, Gerald M. Edenfield, E. Lee Davis, Jr.,* for appellant.

*Hunter, Maclean, Exley & Dunn, Christopher W. Phillips, Roland B. Williams,* for appellee.