### A97A1543. BAHADORI v. SIZZLER #1543 et al.

POPE, Presiding Judge.

Resa Bahadori appeals from the decision of the State Board of Workers' Compensation, requiring him to reimburse his former employer, Sizzler #1543 (Sizzler) and Sizzler's insurer, National Union Fire Insurance Company (National Union), for workers' compensation benefits paid to him. The basis for the award was that Bahadori improperly received workers' compensation income benefits from Sizzler and National Union while he was a salaried employee of another company.

On July 22, 1989, while he was employed as a manager at Sizzler, Bahadori was shot in the shoulder area during an armed robbery of the restaurant. Sizzler paid Bahadori's claim for workers' compensation benefits. See OCGA § 34-9-221 (a). When Bahadori recovered, he moved to South Carolina and went to work for S & S Cafeterias. Sizzler stopped paying Bahadori benefits after he recovered and went to work for S & S.

Two years later, in 1992, Bahadori filed a claim for benefits against Sizzler, alleging that due to his injury at Sizzler, he was unable to work for S & S from September 8, 1992, through December 12, 1992. Sizzler did not controvert this claim and paid it in early 1993.

Later in 1993, Bahadori filed another claim for benefits based upon a change of condition, seeking temporary total disability benefits for September 1, 1993, through December 12, 1993, and medical expenses. Sizzler investigated this claim and determined that although it had paid Bahadori benefits for his earlier claim covering September through December 1992, Bahadori was actually working for S & S and receiving a salary during that time.

Thereafter, Sizzler requested a hearing to controvert Bahadori's claim and to seek reimbursement of the income benefits paid from September through December 1992. Prior to the hearing, Bahadori withdrew his 1993 claim for resumption of income benefits, but his claim for medical expenses and Sizzler's overpayment claim remained pending.

Following a hearing in the matter, the ALJ determined that Bahadori had been working for and receiving a salary from S & S in 1992 when he made his claim for temporary total disability benefits against Sizzler and therefore had not been entitled to the 1992 benefits Sizzler paid him in early 1993. The appellate division upheld that determination, and on appeal to the superior court the matter was affirmed by operation of law. This discretionary appeal followed.

1. Bahadori contends that the State Board may adjudicate overpayment claims only in change in condition cases, and that the State Board thus lost jurisdiction to consider Sizzler's overpayment claim after he withdrew his claim for income benefits based on a change in condition. We reject that contention.

The 1978 amendment to the Workers' Compensation Act, currently codified at OCGA § 34-9-104 (d) (2), first authorized the State Board to adjudicate claims for reimbursement of overpaid benefits. Before that amendment, the State Board had no jurisdiction to consider such claims, and the only recourse an employer/insurer had was to file a civil action for money had and received. See *Ga. Cas. &c. Co. v. Randall*, 162 Ga. App. 532 (292 SE2d 118) (1982); *Seaboard Fire &c. Ins. Co. v. Smith*, 146 Ga. App. 893 (247 SE2d 607) (1978). The effect of the 1978 amendment was "to economize on the number of actions necessary to finally resolve all the issues presented in an overpayment situation by eliminating the need for an insurer (or employer) to bring a second action in a different forum in order to recover the amount of the overpayment." *Randall*, 162 Ga. App. at 535.

It is undisputed that OCGA § 34-9-104 authorizes the State Board to adjudicate overpayment claims that arise in change in condition cases. As Sizzler's overpayment claim arose out of Bahadori's change in condition case, we hold that Bahadori's withdrawal of his claim for reinstatement of income benefits did not operate to extinguish the State Board's jurisdiction to consider the overpayment issue.

Further, the State Board's power to adjudicate overpayment claims is not limited to change in condition cases in any event. As indicated by its heading, OCGA § 34-9-104 generally governs the modification of an award contained in a prior decision in the event of a change in condition. But the descriptive heading of a Code section does not constitute part of the statute and does not control the construction or interpretation of the statute. *Legum v. Crouch*, 208 Ga. App. 185 (430 SE2d 360) (1993).

In *Randall*, 162 Ga. App. at 534, we held that the 1978 amendment "extended the Board's jurisdiction to include the power to adjudicate the rights and liabilities of the parties as to repayment of income benefits where the Board has determined that overpayments

have been made." And in *Spiva v. Union County,* 172 Ga. App. 151 (322 SE2d 351) (1984), where the employer controverted a claim based on newly discovered evidence after paying benefits for 23 months, the State Board ordered the employee to pay back over $22,000 in benefits, and we affirmed the award.

Neither *Randall* nor *Spiva* limited the State Board's power to adjudicate overpayments under OCGA § 34-9-104 (d) to change in condition cases. *Spiva,* in particular, emphasized that the employer had not shown a change in condition.

Although an overpayment claim may arise in the context of a change in condition case, the overpayment claim itself is not a change in condition case. OCGA § 34-9-104 (d), which authorizes the State Board's adjudication of overpayment claims, is not tied to OCGA § 34-9-104 (b), which authorizes modification of a prior decision based on a change in condition.

The placement of the 1978 amendment authorizing adjudication of overpayment claims in a Code section generally concerning modification of awards in the event of a change in condition does not suggest an intent to limit the State Board's jurisdiction to overpayment claims in change in condition cases. As the undisputed legislative intent of the 1978 amendment was to economize the number of actions necessary to resolve all overpayment issues, it is unlikely the legislature meant to only halfway accomplish its intent.

Limiting the State Board's power to hear overpayment claims to change in condition cases would frustrate that legislative intent. If such a limitation existed, cases involving overpayments attributable wholly or even partially to reasons other than a change in condition, and cases involving overpayments based on a change in condition that occurred more than two years before the employer asserted the claim, would often require proceedings before both the State Board and the superior court in order to resolve all overpayment issues. Cases involving overpayment of medical benefits would always require civil actions. Such consequences would be inconsistent with the legislative intent behind OCGA § 34-9-104 (d) (2).

In summary, as determinations of overpayment of workers' compensation benefits involve the application of workers' compensation law, the State Board is particularly qualified for that function. And we hold that OCGA § 34-9-104 (d) (2) authorizes the State Board to adjudicate all overpayment issues.

2. We also reject Bahadori's contention that Sizzler's overpayment claim was barred because it was not asserted within the two-year limitation period set forth in OCGA § 34-9-104 (b).

OCGA § 34-9-104 (b) establishes a two-year limitation period for modification of a prior award based on a change in condition. But as OCGA § 34-9-104 (d) (2), which authorizes the State Board to hear

overpayment cases, is not tied to OCGA § 34-9-104 (b), the two-year limitation period is inapplicable. Overpayment claims are in the nature of an action for money had and received. *Randall*, 162 Ga. App. at 534. The statute of limitation for such a civil action is four years. OCGA § 9-3-25; *Macomber v. First Union Nat. Bank of Ga.*, 212 Ga. App. 57 (441 SE2d 276) (1994). We hold that the four-year limitation period likewise applies to overpayment claims before the State Board.

Although OCGA § 34-9-104 (d) (2) empowers the State Board to decide overpayment cases, and although the State Board may be the preferred forum for these claims in light of its expertise in workers' compensation law and the interests of judicial economy, there is no general prohibition against pursuing instead a civil action for money had and received.

Because an employer may still pursue a civil action for money had and received, for which a four-year limitation period applies, it would be anomalous to apply a two-year limitation period in an administrative proceeding to recover an overpayment of benefits. In authorizing the State Board to adjudicate overpayment claims, the legislature intended to place the entire range of such cases and issues before the State Board.

Moreover, even if the two-year limitation period set forth in OCGA § 34-9-104 (b) applied to this case, Bahadori's fraud in requesting benefits during a time period in which he was working tolled the statute of limitation. *Spiva*, 172 Ga. App. at 152. As pointed out by both the ALJ and the appellate division, because Sizzler did not discover Bahadori's fraud until 1994, its overpayment claim filed in February 1995 was timely in any event.

3. Bahadori next contends that the State Board's award violates his due process rights. However, his argument addresses itself to a statute of limitation or laches defense. As we have determined that Sizzler's overpayment claim was asserted timely, Bahadori's contention is without merit.

4. Bahadori enumerates as error the Board's action in referring his case to the Workers' Compensation Fraud Unit for investigation. He claims that because the fraud unit was not established until three years after his alleged fraud occurred, the unit cannot investigate his case. Nothing in OCGA § 34-9-24 supports this contention; Bahadori cites no authority for his position; and we can find nothing that requires such a result. Therefore, the Board did not err in its referral of the matter to the fraud unit.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Beasley, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., Blackburn and Eldridge, JJ., concur in part and dissent in part.*

BLACKBURN, Judge, concurring specially in part and dissenting in part.

For the reasons set forth below, I concur in Division 4 of the majority, concur specially as to Division 1, and dissent as to Divisions 2 and 3.

Because this is a change in condition case, I agree with the majority that OCGA § 34-9-104 (d) (2) provides the authority for the Board to review Sizzler's claim for reimbursement. However, I disagree with the majority's position that OCGA § 34-9-104 (d) (2) provides any basis for the Board to exercise jurisdiction over an employer's claim for reimbursement in any case which does not involve a claim for change in condition.

OCGA § 34-9-104 (d) (2) provides the only statutory basis for reimbursement found in the Workers' Compensation Code. In its entirety OCGA § 34-9-104 provides:

"Modification of award or order contained in prior decision in event of *change in condition.*

"*(a) 'Change in condition' defined; benefits.*

"(1) As used in this Code section, the term '*change in condition*' means a change in the wage-earning capacity, physical condition, or status of an employee or other beneficiary covered by this chapter, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise.

"(2) When an injury is not catastrophic, as defined in subsection (g) of Code Section 34-9-200.1, and the employee is not working, the board shall determine that a *change in condition* for the better has occurred and the employee shall be entitled to the payment of benefits for partial disability in accordance with Code Section 34-9-262 if it is determined that the employee has been capable of performing work with limitations or restrictions for 52 consecutive weeks. Within 60 days of the employee's release to return to work with restrictions or limitations, the employee shall receive notice from the employer on a form provided by the board that will inform the employee that he or she has been released to work with limitations or restrictions, will include an explanation of the limitations or restrictions, and will inform the employee of the general terms of this Code section. In no event shall an employee be eligible for more than 78 aggregate weeks of benefits for total disability while such employee is capable of performing work with limitations or restrictions. No provision of this paragraph shall be interpreted to prevent a *change in condition* from occurring pursuant to paragraph (1) of this subsection or to prevent an employee from becoming eligible for benefits for total disability should such employee subsequently become totally disabled after exhausting 52 consecutive weeks or 78 aggregate

weeks of such benefits while capable of performing work with limitations or restrictions. Whenever an employer seeks to convert an employee from benefits for total disability to benefits for partial disability as provided in this paragraph, such employer may convert the benefits unilaterally by filing a form indicating the reason for the conversion as prescribed by rule of the board.

"(b) *Modification of prior final decision.* The board on its own motion may propose or any party may apply under this Code section for another decision because of a *change in condition* ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided that the prior decision of the board was not based on a settlement; and provided, further, that at the time of application not more than two years have elapsed since the date the last payment of income benefits pursuant to Code Section 34-9-261 or 34-9-262 was actually made under this chapter; provided, however, any party may file for benefits solely under Code Section 34-9-263 not more than four years from the date the last payment of income benefits pursuant to Code Section 34-9-261 or 34-9-262 was actually made under this chapter. If, at the time of application, the foregoing requirements have been met but the prior decision is then on appeal to the courts, the entering of a decision on the application shall be deferred pending final ruling of the courts.

"(c) *Interlocutory orders.* On application of either party, for good cause shown, at any time while a claim is pending, the administrative law judge or the board may enter an interlocutory order suspending the payment of all or part of or increasing or decreasing the income benefits due under the decision sought to be modified. Good cause, as shown by preliminary evidence in the form of affidavits, sworn documents, depositions, interrogatories, or medical reports, may include, but not be limited to, an unjustified refusal to accept suitable and available employment, an increase or decrease in the physical impairment or wage-earning capacity of the employee, or the granting of continuance.

"(d) *Retroactive effect of decision.*

"(1) Subject to the limitation in subsection (a) of this Code section that a *change of condition* was a change which occurred after the date on which the wage-earning capacity, physical condition, or status of the employee was last established by award or otherwise, the award or order contained in the final decision entered by the administrative law judge or the board shall be effective as of the time of *change in condition* as found by the administrative law judge or board, notwithstanding the retroactive effect of the award or order, provided that no execution following a judgment entered under Code Section 34-9-106 shall be affected.

"(2) If *the decision* determines that an overpayment of income benefits has been made and no future income benefits are due, the administrative law judge or the board, in its discretion, may order the employee or beneficiary to repay to the employer or the insurer the sum of the overpayments. Where there has been determined an overpayment of income benefits and future income benefits were due, the decision shall order the overpayment to be recovered by shortening the period of future weekly income benefits or by reducing the weekly benefits, or both.

"(e) *Credits to employer for lump sum or advance payments.* Where a lump sum payment or an advance payment has been made to an employee under Code Section 34-9-222 and a subsequent *change in condition* is found to have occurred, the employer shall be entitled to credit against future income benefits equal to the amount of the lump sum or advance payment. This shall be accomplished by reducing the period of future weekly income benefits or by reducing the weekly benefit, or both." (Emphasis supplied and in original.)

Prior to 1978, there was no authority for an employer to recoup overpayment from an employee under the Workers' Compensation Act. Any employer who had overpaid an employee was limited to bringing an action in civil court. This was awkward where a change in condition case was pending before the Board when the overpayment came to light. In response to this problem, the legislature amended the Act to provide that where a change in condition action was before the Board, it could also address any prior overpayment. See OCGA § 34-9-104 (d) (2). The employer retained its traditional remedy through the civil courts in other circumstances involving an overpayment. Inasmuch as the Board is not a court of general jurisdiction and is limited strictly to the authority granted it by the Act, it cannot assume jurisdiction over those fraud or money-had-and-received claims which do not involve a change in condition.

The clear language of OCGA § 34-9-104 (d) (2) provides for the modification of an award or previous payment in the event of a change in condition. The entire Code section deals with and refers to claims based upon a change in condition. It defies logic to determine that the legislature would place an amendment affecting the entire Workers' Compensation Code in a subsection of a subsection of a Code section referring exclusively to change in condition claims. However, as there is no question that the present case arose as a change in condition case due to Bahadori's change in condition claim filed in 1993, such Code section applies to the present circumstances. I agree with the majority that Bahadori's dismissal of his change in condition claim cannot affect Sizzler's claim for reimbursement which was filed in response to Bahadori's 1993 change in condition claim.

Although prior to 1978, the Code provided for the *modification* of a prior award based on a change in condition, it did not provide for *reimbursement* to the employer for any overpayment. The employer was authorized to recover overpaid benefits by reducing the amount paid on future benefits due. See OCGA § 34-9-243 (a). In 1978, OCGA § 34-9-104 was amended to add subsection (d) which allowed for reimbursement "[i]f the [Board's] decision determines that an overpayment of income benefits ha[d] been made and no future benefits [were] due." The reference to *"the decision"* necessarily refers to the Board's decision in the change in condition matter. Prior to this amendment any claims for reimbursement were brought in civil courts. See *Ga. Cas. &c. Co. v. Randall*, 162 Ga. App. 532 (292 SE2d 118) (1982). However, in *Randall*, which was in fact a change in condition case, we interpreted OCGA § 34-9-104 (d) (2) more broadly than was proper and held that it applies in *all* instances where reimbursement for overpayment was sought. While the result in *Randall* was correct because it was a change in condition case, either analysis brings about the same result. I would limit *Randall* to change in condition cases.

In *Spiva v. Union County*, 172 Ga. App. 151 (322 SE2d 351) (1984), the Court relied upon OCGA § 34-9-104 (d) (2) to authorize the reimbursement of previously paid benefits. Id. at 154. OCGA § 34-9-221 (j) allows for the modification of previous amounts paid; however, it does not provide any basis for reimbursement of amounts overpaid. *Spiva* dealt with newly discovered evidence and the controversion of a claim pursuant to OCGA § 34-9-221 (d), as the Court recognized therein. It did not involve a change in condition or involve the application of OCGA § 34-9-104 (d) (2) as contended therein. I would, therefore, overrule the decision in *Spiva* to the extent that it holds that OCGA § 34-9-104 (d) (2) provides authority for the Board to order reimbursement of overpayment where no change in condition claim is involved. While the legislature is free to so provide, to date, it has not done so.

This interpretation is consistent with the limited authority conferred on the Workers' Compensation Board, see *Randall*, supra at 533 (the Board "is an administrative body possessing only the power conferred upon it by statute to administer the workers' compensation act"), and with the spirit of the Workers' Compensation Act. See *Southeastern Aluminum Recycling v. Rayburn*, 172 Ga. App. 648, 649 (324 SE2d 194) (1984) (the Act "was designed to provide immediate financial assistance to injured employees and to furnish a speedy, inexpensive and final settlement of their claims"). Furthermore, this interpretation is consistent with our previous determinations that "[t]he Workers' Compensation Act is to be liberally construed to carry out its purpose of providing relief to injured employees while protect-

ing employers from excessive damage awards." *Mountainside Med. Center &c. v. Tanner*, 225 Ga. App. 722 (484 SE2d 706) (1997).

Employers retain their traditional remedies for claims not involving a change in condition. For cases in which OCGA § 34-9-104 (d) (2) is inapplicable, employers must seek redress in civil courts for money had and received or fraud. See *Randall*, supra. It is not inconsistent to allow some claims to go before the Board and some claims to continue to be filed in civil courts. Where there is no claim pending before the Board, a claim for recoupment of sums paid but not due is not different from any other claim seeking monetary recovery and should be handled by the civil courts of general jurisdiction until the legislature determines otherwise. Such cases are more suited to civil courts because they have nothing to do with the purpose and intent of the Workers' Compensation Act.

I dissent from the majority's position that the two-year limitation period set forth in OCGA § 34-9-104 (b) does not apply to claims for reimbursement. The majority simply ignores the language of OCGA § 34-9-104 and judicially legislates its own statute of limitation to obtain the result it desires. While the result may be desirable, it is for the legislature, not this Court, to so determine.

OCGA § 34-9-104 (b) requires that at the time of application for a modification of a prior decision "not more than two years have elapsed since the date [of] the last payment of income benefits." Bahadori was paid benefits pursuant to his 1992 claim for change in condition by check dated February 16, 1993. Sizzler's request for a hearing and reimbursement of this previous payment was signed on February 13, 1995; however, it was not filed until February 22, 1995. Therefore, more than two years had elapsed between the date of the last payment and the date of the request for reimbursement. Accordingly, Sizzler's request for reimbursement was beyond the two-year statute of limitation provided in OCGA § 34-9-104 (b), and the award of reimbursement should be reversed.

There is no authority for the majority's infusion of a general four-year statute of limitation governing causes of action in civil courts of general jurisdiction for money had and received or fraud into an administrative action which is strictly controlled by the Workers' Compensation Act. The Board, as an administrative body, has no authority except that granted to it by the Act and is bound by the limitations to actions contained therein. By what authority does this Court adopt a four-year statute of limitation in a workers' compensation case? The legislature has not so provided. The majority's holding violates the constitutionally provided separation of powers.

I am authorized to state that Presiding Judge McMurray and Judge Eldridge join in this opinion.

Decided December 5, 1997 —
Reconsideration granted December 19, 1997

*Clements, Clark & Sweet, John F. Sweet*, for appellant.
*Hamilton, Westby, Marshall & Antonowich, Steven A. Westby, Joseph T. Brasher*, for appellees.