### A99A0847. ALDRICH v. CITY OF LUMBER CITY et al.
(530 SE2d 195)

ELDRIDGE, Judge.

Bobby Aldrich's application for discretionary review was granted to consider the superior court's affirmance of a workers' compensation award in favor of the City of Lumber City, the City of Alamo, the Georgia Municipal Association Workers' Compensation Fund, and Sedgwick James of Georgia, Inc. ("Sedgwick James"), the servicing agent. The judgment obligates Aldrich to repay the amount of total disability benefits he received over a several-year period during which Aldrich was employed and about which he failed to notify his former employer, the City of Lumber City, or its insurer. Aldrich appeals, contending that the principle of res judicata and the existence of a 1994 settlement agreement foreclosed this result.

In August 1989, while on duty as a police officer for Lumber City, Aldrich sustained a compensable injury when he experienced a "lightning sting" which aggravated his pre-existing diabetic condition. Aldrich asserted that certain medical complications relating to his right foot were caused when lightning struck a nearby pole then exited the top of his shoe. Although Lumber City controverted Aldrich's claim, and the administrative law judge ("ALJ") denied benefits, on May 3, 1991, the appellate division of the State Board of Workers' Compensation decided that Aldrich's claim was compensable and awarded benefits. The appellate division directed Lumber City to pay medical expenses as well as weekly income benefits commencing September 22, 1989, and "continuing until changed or terminated according to law."

While appealing the initial denial of benefits and after receiving temporary total disability benefits, Aldrich secretly worked for several other employers, including as a contractor for the Department of Family & Children Services in 1991 and later as a night security officer for a Hardee's restaurant. On August 1, 1994, while still receiving benefits from Lumber City and its insurer, Aldrich began working as a police officer for the City of Alamo. While employed by the City of Alamo, Aldrich continued to receive weekly workers' compensation benefits as well as Social Security disability payments.

On November 3, 1994, Aldrich's patrol car struck a cow. Alleging that he had hurt his left knee and sprained his neck, Aldrich then filed a claim for workers' compensation benefits. When an adjuster, Stella Jones, recognized Aldrich's name, she confirmed his identity

and employment with the City of Alamo. The City of Alamo then controverted Aldrich's claim on the basis that Aldrich was receiving total disability benefits from Lumber City. Notice of an intent to suspend benefits effective December 7, 1994, was filed with the State Board. According to Jones, she had no record in her files that Aldrich had notified her that he had returned to work.

Aldrich sought additional income and medical benefits based on a change in condition for the worse from his original injury with Lumber City in 1989 or, in the alternative, a new injury while working for the City of Alamo. The ALJ found that Aldrich was "unworthy of belief," "unresponsive," and "evasive in his testimony"; that Aldrich had not been injured when his patrol car struck the cow; that he had not undergone a change in condition for the worse with respect to the 1989 injury; that his pre-existing diabetic condition had resolved to its pre-1989 injury state; and that, after February 7, 1991, Aldrich's physical condition was no longer attributable to the 1989 injury, the aggravation of his pre-existing diabetic condition.[1] The ALJ determined that "through carelessness, work activities and numerous additional accidents, the aggravation of claimant's diabetic condition ceased to be related to the 1989 injury." Finding that Aldrich did not qualify for benefits relating to the 1989 injury after February 7, 1991, the ALJ terminated benefits effective that date. The ALJ ordered Aldrich to make reimbursements for the overpaid disability benefits received after February 7, 1991, until the suspension of benefits on December 7, 1994.

In issuing its award, the appellate division embraced the factual findings and legal analysis of the ALJ. The appellate division agreed that Aldrich had undergone a change in condition for the better and was, therefore, not entitled to income benefits and medical expenses after February 7, 1991. Finding evidence in the record which supported the award, the superior court affirmed the appellate division's decision.

1. Aldrich asserts that the judgment by the superior court violates the doctrine of res judicata. He claims that after the State Board found in its May 3, 1991 award that he had sustained a compensable injury, it lacked jurisdiction to alter that award. We disagree.

In 1978, the legislature expressly empowered the State Board to

---

[1] The record contains medical evidence which documents that Aldrich had diabetic foot problems including multiple foot infections and cellulitis of his toes before the 1989 compensable injury. An expert, Judson G. Black, M.D., the Medical Director of the Diabetic Treatment Center at West Paces Ferry Medical Center, examined Aldrich, who has been diabetic since the age of nine. Dr. Black determined that all of Aldrich's medical problems "are related to his poorly controlled diabetes mellitus, and that is aggravated by his exogenous obesity."

order an employee to repay income benefits to an employer when there has been a change of condition hearing. *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203, 204 (1) (507 SE2d 467) (1998).

> If *the decision* determines that an overpayment of income benefits has been made and no future income benefits are due, the administrative law judge or the board, in its discretion, may order the employee or beneficiary to repay to the employer or the insurer[ ] the sum of the overpayments.

(Emphasis in original.) Id. See also OCGA § 34-9-104 (d) (2).

By law, provided that certain statutory requirements are met, an award can be subsequently modified.

> [A]ny party may apply under this Code section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided that the prior decision of the board was not based on a settlement; and provided, further, that at the time of application not more that two years have elapsed since the date [of] the last payment of income benefits pursuant to Code Section 34-9-261.

OCGA § 34-9-104 (b). Here, the record confirms that the modification was based on a change of condition which altered the recovery of income benefits awarded in a prior final decision; the State Board had approved the 1991 award; and the final award had not been based on a settlement. Nor was the modification untimely since two years had not elapsed since payment of income benefits to Aldrich. See *Bahadori*, 270 Ga. at 204 (2) (limitation period for recovery of overpaid benefits under OCGA § 34-9-104 (d) (2) is two years from date of last payment of income benefits). Thus, under OCGA § 34-9-104, the State Board had jurisdiction to modify the earlier award.

Notwithstanding Aldrich's claim to the contrary, *Gaddis v. Ga. Mountain Contractors*, 213 Ga. App. 126, 127 (1) (443 SE2d 710) (1994) neither authorizes nor requires a different result. In that case, unlike here, because the State Board was not seeking to alter an earlier award based on a change in condition, the doctrine of res judicata precluded any attempt to modify that final judgment. Id. at 127-128 (1). Aldrich's reliance upon *Webb v. City of Atlanta*, 228 Ga. App. 278, 279 (1) (491 SE2d 492) (1997) is similarly misplaced. In that case, unlike here, the applicability of the doctrine of res judicata was addressed in the context of whether disability payments should have been credited against income benefits. *Webb* was not a change of condition case and did not concern the application of OCGA § 34-9-104

(a). Id. at 280 (2).

Aldrich asserts that the ALJ was required to find that the change of condition took place after May 3, 1991, and, thus, erred in finding that it occurred in February 1991. But OCGA § 34-9-104 (d) specifically permits such retroactivity.

> [T]he award or order contained in the final decision entered by the administrative law judge or the board shall be effective as of the time of change in condition as found by the administrative law judge or board, notwithstanding the retroactive effect of the award or order.

OCGA § 34-9-104 (d) (1).

The legislature amended the Act in 1978 to provide that where a change in condition action was before the State Board, it could also address any prior overpayment. See OCGA § 34-9-104 (d) (2). But Aldrich's twisted interpretation of the statutory language of subsection (d) would eviscerate an employer/insurer's right to recover such overpayments and is counterintuitive to the logic of the Supreme Court in *Bahadori*, 270 Ga. 203. In construing this subsection, the Supreme Court did not find that the employer and its insurer were limited to recovering only overpayments made to Bahadori after "last established by award or otherwise." On the contrary, assuming arguendo that the employer/insurer could surmount the statute of limitation problem by proving fraud, then the overpayments made to Bahadori in 1992 could be recovered for the period during which Bahadori was secretly working for another employer.[2]

OCGA § 34-9-104 (d) (1) expressly authorizes an award to "be effective as of the time of change in condition as found by the administrative law judge or board, notwithstanding the retroactive effect of the award." In these circumstances, the State Board was authorized to enter an award retroactive to and effective on February 7, 1991, the date on which the ALJ found that a change in condition had occurred.

2. Aldrich contends that the superior court erred as a matter of law in affirming the award because the State Board had previously approved an agreement entered into between Lumber City and the Subsequent Injury Trust Fund ("Trust Fund") as of June 29, 1994.

Nearly three years after the May 1991 award of benefits to

---

[2] The last benefit check to Bahadori was dated February 16, 1993. Sizzler's request for a hearing and reimbursement was not filed until February 22, 1995, more than two years later. *Bahadori v. Sizzler No. 1543*, 230 Ga. App. 52, 60 (505 SE2d 23) (1997), overruled on other grounds, *Bahadori*, 270 Ga. 203. Whereas, here, the claim for reimbursement from Aldrich was not untimely.

Aldrich, Lumber City, the Georgia Municipal Association ("GMA"), and Sedgwick James entered into a reimbursement agreement with the Trust Fund which was approved by the State Board on June 29, 1994. In that agreement, Lumber City, GMA, Sedgwick James, and the Trust Fund stipulated that Aldrich's original injury of August 25, 1989, merged with Aldrich's pre-existing condition. Pointing to this stipulation in the reimbursement agreement as well as to the existence of the agreement itself, Aldrich contends that any subsequent review of the 1991 award was procedurally barred.

The May 1991 award pre-dated the reimbursement agreement by nearly three years and, thus, could not possibly have been based on an agreement not yet in existence. Further, the terms of this contract confirm that it is a plan for repayment, not a settlement agreement between Aldrich as an employee and his employer/insurer to resolve Aldrich's workers' compensation claims. Compare *Robinson v. Zurich Ins. Co.*, 131 Ga. App. 795, 796 (207 SE2d 209) (1974) (absent a change of condition, where parties' agreement approved by the State Board, the State Board cannot later modify it). Moreover, since Aldrich was not a party to the reimbursement agreement and the issues were not identical, the doctrine of res judicata did not apply. *Lay Bros., Inc. v. Tahamtan*, 236 Ga. App. 435, 436 (511 SE2d 262) (1999). Consequently, the employer/insurer was entitled to reimbursement for the amount overpaid to Aldrich for total disability after the date on which his temporary disability ceased. *Cincinnati Ins. Co. v. Minish*, 150 Ga. App. 363, 364 (1) (258 SE2d 45) (1979); see *Ga. Pacific Corp. v. Wilson*, 225 Ga. App. 663, 664 (1) (484 SE2d 699) (1997) (new award not precluded by res judicata where movant sustains burden of proving change of condition).

*Judgment affirmed. Johnson, C. J., Pope, P. J., and Ellington, J., concur. Blackburn, P. J., concurs in Division 1 and concurs specially in part and dissents in part in Division 2. Smith and Barnes, JJ., dissent.*

BLACKBURN, Presiding Judge, concurring specially in part and dissenting in part.

I fully concur with Division 1 of the majority opinion. I concur with the analysis of Division 2 which finds that an award on the overpayment claim is not subject to the express limitation applicable to change of condition orders contained in OCGA § 34-9-104 (d) (1) under the facts of this case. I write separately on that issue to further explicate its intricacies. However, I dissent from the portion of the analysis and holding of Division 2 of the majority that simply affirms because I would remand the case for a determination of whether or not the employer had been reasonably diligent in investigating this claim.

The award on the overpayment claim is not subject to the express limitation applicable to change of condition orders contained in OCGA § 34-9-104 (d) (1) under the facts of this case. Under *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203-204 (1) (507 SE2d 467) (1998), the Workers' Compensation Board's authority to adjudicate an employer's overpayment claim is limited to those claims which can be addressed in the context of a change of condition hearing.

Prior to 1978, the Board had no authority to adjudicate claims for reimbursement of overpaid benefits. The purposes of the 1978 amendment to the Workers' Compensation Act were to encourage judicial economy and to grant authority to the Board, where a change of condition claim is pending, to also adjudicate any overpayment claim which arises in the context thereof. While this overpayment claim arises in the context of this change of condition claim, the overpayment claim itself is not a change of condition claim. *Bahadori v. Sizzler No. 1543*, 230 Ga. App. 52 (505 SE2d 23) (1997), overruled on other grounds, *Bahadori v. Nat. Union Fire Ins. Co.*, 270 Ga. 203. This case involves a finding by the Board that the claimant had misrepresented facts to the employer, had filed improper multiple claims from which he had received benefits, and was totally lacking in credibility — evidence which authorizes its finding of a change in condition and supports its award on the overpayment claim.

The purpose of the 1978 amendment would be thwarted if employers were limited in their overpayment award in fraudulent claim cases to those sums paid after the last award of benefits, which benefits were obtained by fraud. Where the employer has acted reasonably in investigating the claim and that investigation has been thwarted by claimant's misrepresentations and failure to disclose, then such employer has a right to recoup all sums wrongfully paid as a result of claimant's conduct. Under these circumstances, the employer is authorized to controvert the claim as the statute of limitation is tolled by claimant's conduct. The employer is free to raise all defenses and present all evidence that would have been addressed but for claimant's conduct. Where the employer's overpayment claim arises in the context of a change of condition claim the employer is entitled to seek relief through the Board, which is authorized to act under these narrow circumstances. The limitation of OCGA § 34-9-104 (a) (1) applies to a change of condition claim only, not to an overpayment claim based on the fraud of the claimant. The law does not limit the employer's rights in this regard unless the matter has been settled or in the case of an executed judgment. OCGA § 34-9-104 (b).

The statute of limitation for the filing of a notice to controvert is not tolled as a matter of law based upon claimant's fraudulent conduct. Whether the employer was diligent in discovering the fraud is a

fact question, which, when coupled with the fraudulence of claimant's conduct, determines whether the employer's right to controvert the claim has been tolled. See *Bahadori*, 270 Ga. at 206. Fraud which tolls a statute of limitation must be such actual fraud as could not have been discovered by the exercise of ordinary diligence. See *Webb v. Lewis*, 133 Ga. App. 18, 21 (209 SE2d 712) (1974). Where the fraud of a claimant thwarts an employer's reasonably diligent investigation, the time within which the employer could controvert the claim is tolled. See *Spiva v. Union County*, 172 Ga. App. 151 (322 SE2d 351) (1984).

In *Bahadori*, the employer sought repayment of benefits overpaid based on claimant's misrepresentations and the fact that he was, in fact, working while receiving workers' compensation disability payments. The employer sought to controvert the claim based on the tolling of the statute of limitation as a result of the claimant's misconduct. Our Supreme Court remanded the case for further findings of fact, concluding that the Board had not answered the question: "Did Bahadori's fraud thwart [the employer's] original investigation?" *Bahadori*, 270 Ga. at 206. The Supreme Court held that it must have done so in order to toll the statute of limitation.

> In this case, Bahadori claimed falsely that he did not work between the months of September and December 1992, because of his prior injury. Although this misrepresentation may have been sufficient to thwart a reasonably diligent investigation, the board made no findings in this regard. Therefore, . . . we remand. . . . "[T]here must be a balancing between the prompt and voluntary initiation of the payment of workers' compensation benefit[s] to an employee, on the one hand, and the availability, on the other hand, of an opportunity for the employer/insurer to base a notice to controvert upon evidence which the employer/insurer was unable to discover earlier as a result of the employee's own misrepresentation."

Id. at 207. See also *Carpet Transport v. Pittman*, 187 Ga. App. 463 (370 SE2d 651 (1988). It is implicit in *Bahadori v. Nat. Union Fire Ins. Co.*, that the employer would be entitled to the overpayment of the 1992 benefits as awarded upon a showing that Bahadori had thwarted its reasonably diligent investigation. Otherwise, it would make no sense to remand the case for a factual determination if the employer was not entitled to recover a portion of the award as a matter of law without reference to that fact.

Judge Smith's dissent's reliance upon *Webb v. City of Atlanta*, 228 Ga. App. 278 (491 SE2d 492) (1997), is misplaced as to the doc-

trine of res judicata. *Webb* involved a failure of the City of Atlanta to seek credit in the workers' compensation proceeding for sums paid to claimant under its disability benefits plan, which it was clearly entitled to do. It was not entitled, however, to later unilaterally assert its rights and reduce the claimant's benefits after an award had been made to claimant as it did. This Court properly held that the City knowingly failed to timely assert its rights and thereby waived them. There was no claimant misconduct or misrepresentation, and this Court properly applied the doctrine of res judicata under those circumstances because the City was fully aware of the facts at the time of the litigation. The doctrine of res judicata has no application however to a fraudulently obtained award.

It is clear from the order of the administrative law judge that the employers in this case argued that Aldrich "is not worthy of belief and that he has made numerous inconsistent and incorrect statements under oath." They also argued that, contrary to Aldrich's position, his injuries resulting from striking a cow in his automobile were "neither serious nor disabling." Based on these arguments *and Aldrich's admissions*, the ALJ found, among other things, that Aldrich accepted workers' compensation benefits which "he knew he was not entitled to receive in 1991, 1992 and 1994." The ALJ further stated that, during the hearing, "it was evident that [Aldrich] was being uncooperative, untruthful and evasive."

Here, Aldrich knowingly received funds he was not entitled to by misrepresenting his injuries and his employment status to his employers. But for these misrepresentations, Aldrich's employers would not have made these payments to him, as they argued before the ALJ. Whether Aldrich's employers described his behavior as untruthful, evasive, or not worthy of belief, the underlying gist of their argument was that they had been defrauded. The tribunals below us recognized this fact and appropriately ruled on it. We should, and indeed we must, do the same here.

It is abundantly clear from the record that the employer has maintained, at every opportunity, that Aldrich obtained benefits by falsehoods. On January 16, 1998, a hearing was held before the ALJ in which the employer contended Aldrich's falsehoods required that the benefits be suspended and that they be allowed repayment for the amounts overpaid. After the hearing, the trial court gave the parties ten days from the receipt of the transcript to file briefs. In the briefs submitted to the ALJ on February 20, 1998, the employer argued that Aldrich's misrepresentations should allow the employer to obtain the overpayment in benefits paid due to such misrepresentations. The employer specifically listed numerous incidents of misrepresentations, including, but not limited to the following: (1) despite claiming to be disabled, Aldrich worked for the Depart-

ment of Family & Children Services in 1991; (2) despite claiming to be disabled and while applying for Social Security disability benefits, Aldrich worked providing security for Hardee's in 1992; (3) Aldrich failed to inform the employer about his return to work and did not return money he received as workers' compensation benefits; (4) despite the fact that Aldrich had injured his feet numerous times during 1992 and 1993 in accidents involving wheelbarrows, concrete blocks and plows, Aldrich asserted at the hearing that the cause of his foot problem was the 1989 injury. And finally, as discussed above, in the ALJ's order, the ALJ makes specific findings of misrepresentations on Aldrich's part and determines that the employer is entitled to repayment of those benefits which were overpaid.

Whether an overpayment claim which arises in the context of a change of condition claim is of the type which would toll the statute of limitation on an employer's right to controvert, and thereby authorize repayment without regard to the prior award limitation of OCGA § 34-9-104 (a) (1), depends on whether claimant's misconduct thwarted the employer's reasonable investigation. Such right is born out of the evidence presented in the change of condition hearing on the case based on the factual contentions and proof. It is not necessary that the overpayment claim be separately enumerated like a count in an indictment. Its existence is intrinsic in the contentions and facts of the change of condition case. Here, the employer clearly contended and the Board determined that the claimant had misrepresented facts and had knowingly sought and received benefits to which he was not entitled. This proven contention was the basis for the overpayment award which the employer received and to which it would not have been entitled but for its overpayment claim and proof thereof.

*Bahadori*, 270 Ga. 203, cannot be disregarded because it was a "statute of limitation case relying on OCGA § 34-9-104 (d) (2)" and therefore not applicable to this case. *Bahadori v. Nat. Union Fire Ins. Co.* is no more confined to statute of limitation cases than *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) is confined to premises liability cases. Our Supreme Court addressed in great detail therein numerous alternative cases in which this Court had dealt with some of the procedures herein addressed. I have followed the very procedure prescribed by our Supreme Court to address the underlying, unanswered question, "Did Aldrich's fraud thwart the employer's reasonable investigation?" There is no more germane case than *Bahadori v. Nat. Union Fire Ins. Co.*

Therefore, I would affirm that portion of the award based solely on a change of condition from the date of the current award to the employer through the date of the last award on May 3, 1991, under the limitations of OCGA § 34-9-104 (a) (1), pursuant to OCGA § 34-9-

104 (d) (1). I would further remand the case for a determination of whether or not the employer had been reasonably diligent in investigating this claim, and, if so, did the claimant's misrepresentations thwart such investigation sufficiently to toll the statute of limitation on employer's right to controvert the claim. If so, then the employer would be entitled to recover on the overpayment claim, which would include the additional sums for the period of February 8, 1991, the date the Board determined the claimant no longer qualified for benefits from the 1989 injury, through May 3, 1991, without being subject to the previously described limitations for the reasons outlined above.

SMITH, Judge, dissenting.

If the ruling in this case depended solely upon "doing the right thing," I would have no hesitation in agreeing with the majority that Aldrich ought to, in justice, be required to return every penny that he obtained through his wrongful conduct. But we are bound by the clear mandate of OCGA § 34-9-104 (d) (1), limiting the retroactive application of a modified award:

> *Subject to the limitation in subsection (a) of this Code section that a change of condition was a change which occurred after the date on which the wage-earning capacity, physical condition, or status of the employee was last established by award or otherwise,* the award or order contained in the final decision entered by the administrative law judge or the board shall be effective as of the time of change in condition as found by the administrative law judge or board, notwithstanding the retroactive effect of the award or order.

(Emphasis supplied.)

Under this statutory provision, the board was authorized to enter an award "effective as of the time of the change in condition as found by the administrative law judge or board," OCGA § 34-9-104 (d) (1), but was not authorized to find a change of condition effective before the date of Aldrich's last award. "An unappealed award of total disability payments is res judicata as to the existence of such disability and the compensation due thereunder." (Citation, punctuation and emphasis omitted.) *Webb v. City of Atlanta,* 228 Ga. App. 278, 280 (1) (491 SE2d 492) (1997).

The majority contends that *Bahadori v. Nat. Union Fire Ins. Co.,* 270 Ga. 203 (507 SE2d 467) (1998), disposes of this clear statutory provision. *Bahadori* addresses the power granted the State Board of Workers' Compensation under OCGA § 34-9-104 (b) to order repayment of income benefits in the context of a change of condition hear-

ing. But the express limitation on a retroactive award provided by the legislature in OCGA § 34-9-104 (d) (1) was never raised or addressed in *Bahadori*. Moreover, it was inapplicable there. The 1992 claim as to which the employer sought repayment was never controverted but simply paid by the employer. Id. at 203. Issue was never joined, and the "wage-earning capacity, physical condition, or status of the employee" was never "established by award or otherwise" within the meaning of OCGA § 34-9-104 (d) (1). In contrast, this case involves a prior award of the board which by the statute's express terms imposes a limit on appellees' recovery.

It is certainly true that Aldrich's conduct was both wrongful and fraudulent. But *Bahadori* provides no support for treating this case as a claim of fraud. First, *Bahadori* addressed the issue of fraud solely in the clearly permissible context of tolling a statute of limitation, not as somehow contradicting the plain language of the controlling law. Second, the claim of fraud was properly raised by the employer in the course of the litigation. Id. at 205 (3).

Here, in contrast, although the employers argued in their brief before the appellate division that Aldrich's fraudulent conduct rendered his testimony not credible and supported the ALJ's finding of no disability, they did not assert fraudulent conduct as a ground in support of their request for reimbursement under OCGA § 34-9-104. Neither employer raised fraud as a defense to Aldrich's claim or moved to set aside the earlier findings for fraud.

The ALJ and the appellate division based their decisions entirely on the change of condition and reimbursement provisions of the workers' compensation statutes and never addressed the issue of fraud. Furthermore, the employers' brief before this court does not raise the issue of fraud. But when fraud is alleged, it must be pled with particularity. OCGA § 9-11-9. Mere references to fraudulent conduct will not suffice when a litigant has failed to assert a cause of action based upon fraud in the trial court. *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 127 (2) (d) (483 SE2d 135) (1997). This court has recognized that "common sense and equity require" that the Civil Practice Act control some procedural aspects of workers' compensation litigation. *Wade v. Harris*, 210 Ga. App. 882, 885 (1) (437 SE2d 863) (1993).

The fraudulent conduct of Aldrich, while clearly wrongful, does not constitute a "change in condition" that can be addressed by OCGA § 34-9-104. Even if we assume for the sake of argument that Aldrich's *moral* condition underwent some alteration for the worse during the events leading up to this appeal, such an event is not within the purview of the Workers' Compensation Act.

A change in condition is defined in OCGA § 34-9-104 (a) as a change in the wage-earning capacity, physical condition, or status of an employee, which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee was last established by award or otherwise.

(Punctuation omitted.) *Maloney v. Gordon County Farms*, 265 Ga. 825, 826 (462 SE2d 606) (1995).

The commission of a fraud on the employer or insurer is obviously not a "change in condition" within the meaning of the statute. The statute does not contemplate a remedy for such conduct, and in this case a retroactive change of condition finding is clearly barred by the express limitation of OCGA § 34-9-104 (a) (1).

But Georgia law has clearly established another remedy, as many cases have held that "the proper way to challenge an award of the Board on the basis that the award was obtained through fraud or misrepresentation is to bring a motion to set aside pursuant to OCGA § 9-11-60 (d) in the superior court." *Hall & Sosebee Trucking Co. v. Smith*, 201 Ga. App. 282, 283 (410 SE2d 784) (1991). Nothing prevents appellees from exercising their other remedies under Georgia law. *Bahadori* itself recognizes that "[i]t is not inconsistent to allow some claims to go before the Board and some claims to continue to be filed in civil courts." Id. at 205 (2). Those alternative remedies are clearly set out in *Hall*, supra, and other decisions of this court. See, e.g., *Wade*, supra; *Griggs v. All-Steel Bldgs.*, 209 Ga. App. 253 (433 SE2d 89) (1993). Appellees failed to employ the recognized and legally proper method for challenging an award they allege was obtained through fraud, and accordingly they are limited to the scope of the particular statutory remedy they sought here.

For these reasons, I respectfully dissent.

I am authorized to state that Judge Barnes joins in this dissent.

DECIDED DECEMBER 20, 1999 —
RECONSIDERATION DENIED JANUARY 7, 2000 —

*Larry N. Hollington*, for appellant.
*Drew, Eckl & Farnham, Daniel C. Kniffen, Terrence T. Rock*, for appellees.